## The Lake Erie and Western Railroad Company

*v.*

## Theodosia Wilson, Admx.

*Opinion filed February 20, 1901.*

1. EVIDENCE—*admissibility of photographs of scene of accident.* Photographs of the scene of an accident, taken soon after the injury, are admissible at the trial, where the condition of the place has not changed between the time of the accident and the time of photographing, and there is nothing in the photographs themselves, or in the evidence, tending to discredit them as accurate representations of the scene at the time the injury occurred.

2. RAILROADS—*when evidence that track was ballasted in customary manner is not admissible.* In an action for death, if there is no complaint as to the general manner in which the side-track where the accident occurred was ballasted it is proper to refuse to admit evidence that it was ballasted in the usual and customary way.

3. SAME—*what essential to recovery for failure to provide safe place to work.* To authorize a recovery against a railroad company for failing to provide an employee with a safe place to work, it must be shown that the defect complained of existed, that the defendant had notice thereof or might have had by the exercise of ordinary care, and that the employee did not know of the defect and had not an equal means of knowledge with the master.

4. SAME—*rule prohibiting servant's recovery for known defect is based on doctrine of assumed risk.* The rule prohibiting a recovery by a servant for a defect known to him which the master had not promised to remedy does not rest upon the ground of contributory negligence upon the part of the servant, but upon the doctrine of assumed risk.

MAGRUDER, J., dissenting.

*Lake Erie and Western R. R. Co.* v. *Wilson,* 87 Ill. App. 360, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

H. M. STEELY, (JOHN B. COCKRUM, of counsel,) for appellant:

A railroad company is not bound to furnish any better side-tracks than such as are in general use, and it is

proper in personal injury cases, where the injuries are alleged to have occurred through defective side-tracks, to admit evidence going to show that the tracks in question were constructed and kept in the usual and customary manner. *Ragon* v. *Railway Co.* 97 Mich. 270; *Railroad Co.* v. *Alsdurf*, 47 Ill. App. 200.

Where a servant has been in the employ of the company for a sufficient length of time to become acquainted with a side-track, and the evidence shows that he had often been on and about it, the law will imply that he knew how the side-track was constructed and ballasted. *Railroad Co.* v. *Alsdurf*, 47 Ill. App. 204; *Ragon* v. *Railway Co.* 97 Mich. 265; *Batterson* v. *Railway Co.* 53 id. 125.

The duty of the master, with reference to the condition of the road-bed and track is practically the same as the duty with reference to appliances, and before an employee can recover he must show and prove, by a preponderance of the evidence, (1) that the track was defective; (2) that the master had notice thereof or ought to have had; (3) that the servant did not know of the defects and had not equal means with the master of knowing, and that the master was chargeable with notice of the particular defect complained of. *Rush* v. *Railroad Co.* 36 Kan. 129; *Clark* v. *Railroad Co.* 48 id. 654; *Railroad Co.* v. *Liehe*, 17 Col. 280; *Hewitt* v. *Railroad Co.* 67 Mich. 61; *Keenan* v. *Railroad Co.* 21 N. Y. Supp. 445; *Railroad Co.* v. *Sanford*, 117 Ind. 265; *Railroad Co.* v. *Scanlan*, 170 Ill. 107; *Railroad Co.* v. *Driscoll*, 176 id. 330; *Goldie* v. *Werner*, 151 id. 551; *Railroad Co.* v. *Garner*, 78 Ill. App. 281; *Schulz* v. *Rohe*, 149 N. Y. 132.

Correct photographs of the place and environments of accidents are helpful aids to the jury in comprehending the causes of such accidents, and when shown to be true and correct representations of the situation at the time of the happening of the accident are properly received in evidence. *Thelkeld* v. *Railroad Co.* 68 Mo. App. 127; *Beardslee* v. *Columbia Township*, 188 Pa. St. 496; *Bedell* v. *Berky*, 76 Mich. 453.

MABIN & CLARK, for appellee:

Unless it shall appear from the evidence that a servant injured while in his master's service had knowledge of the dangers of the service from the master's neglect of duty it will not be presumed, as no one is to be presumed to knowingly incur physical pain and death when he can avoid it at his discretion. Shearman & Redfield on Negligence, (2d ed.) sec. 95; *Railroad Co.* v. *Hines*, 132 Ill. 161.

When the nature of the service is such as to require that exclusive attention be fixed upon it and that he should act with rapidity, it cannot be expected the servant would always bear in mind the existence of the defects. Horton on Negligence, sec. 93; *Dorsey* v. *Phillips*, 42 Wis. 583; *Railway Co.* v. *Sweet*, 45 Ill. 201; *Railway Co.* v. *Gregory*, 58 id. 272; 75 N. Y. 303; *Fairbank* v. *Haentzsche*, 73 Ill. 236; *Railroad Co.* v. *Hines*, 132 id. 165.

A railway company is bound to furnish a safe road and sufficient and safe machinery for the use of its servant. *Railway Co.* v. *Sweet*, 45 Ill. 201.

It is not the business of a servant to ascertain whether the machinery and structure of the road are defective, but the duty of the company is to keep them in a safe condition. 2 Thompson on Negligence, 1012, 1013; *Railroad Co.* v. *Hines*, 132 Ill. 169.

To charge a servant with negligence in using defective appliances known by him to be defective, defendant must show that he knew the defects were dangerous. *Railroad Co.* v. *Knapp*, 176 Ill. 127.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit, as administratrix of the estate of her deceased husband, Art M. Wilson, against appellant, to recover damages for his death while in the employ of appellant, which occurred August 22, 1898, in the switch yards at Rankin, Illinois. Her declaration contained four counts, to the second and fourth of which

demurrers were sustained and the case was tried on the first and third. The first count averred that said Art M. Wilson was a switchman in the employ of the defendant in said yards; that the defendant negligently failed to keep its switch track in reasonably safe repair, by permitting large quantities of grass and weeds to accumulate between the rails, rendering the track dangerous and unsafe, of which accumulation of grass and weeds defendant had, or by the exercise of ordinary care might have had, knowledge, and that while said Art M. Wilson was attempting to couple cars, in the exercise of due care and caution for his own safety, he caught his foot in said grass and weeds and was unable to free himself before one of the cars which he was attempting to couple struck him, and crushed and mangled his leg so that he afterward died from the injuries. The third count made the same averments as to employment and injuries, and alleged that the defendant failed to properly ballast its switch track, by carelessly and negligently permitting a large hole to be and remain along the side of one of the ties, of which hole the defendant knew or by the exercise of ordinary care might have known, and that said Art M. Wilson caught his heel on the part of said tie which projected above the surface and was run over. To these counts the defendant pleaded the general issue. There was a trial and the jury found the defendant guilty under the issues so joined, and judgment for $2000 was entered in pursuance of the verdict. The Appellate Court affirmed the judgment.

At the close of the evidence for the plaintiff, and again after all the evidence was in, the defendant asked the court to give the jury an instruction to find it not guilty. The instruction was refused, and an assignment of error based upon the refusal raises the question whether there was any evidence fairly tending to prove the plaintiff's cause of action, so as to require the submission of the issues to the jury. When the instruction was asked the

following facts had been proved and were not contro-
verted or in dispute: Art M. Wilson had been working
for the defendant about six months as brakeman and
switchman, and had worked in the switch yards at Ran-
kin from midnight until six in the morning since June
29, 1898. About two o'clock in the morning of August
22, 1898, he was working as usual when a freight train
drew in from the west on side-track No. 1. The switch
engine took such cars from the east end of this train
as were not to go farther east, and was putting in other
cars and making up a train to go east. The east end of
the east car left standing on the side-track had a Janney
coupler, which would couple to a similar coupler without
a link and pin or would couple with an ordinary draw-
bar and coupler by means of a link and pin. The switch
engine was pushing a number of cars toward the part of
the train standing on the side-track, and the west end of
the west car had a common or skeleton draw-bar which
coupled with a link and pin. For the purpose of making
the coupling a link and pin had been put in the Janney
coupler, and as the moving cars were being pushed by
the switch engine toward the standing car, and while
still some distance therefrom, Wilson stepped on the
track in front of the west end of the moving cars. The
natural object in going there would be to put a pin in
the draw-bar preparatory to coupling the cars afterward
when they should come together. He was caught by the
moving cars and dragged along about ninety feet, which
was shown by blood on the track and the mark of a heel
in the cinders and ballast. When the moving cars were
stopped and he was removed they were still two or three
car lengths from the standing portion of the train to
which they were to be coupled. His left leg was badly
mangled and he died shortly afterward.

The matters of fact in dispute were as to the exist-
ence of the alleged hole where the car first struck Wilson,
and the number, height and thickness of the weeds and

grass between the rails. The evidence on the part of the plaintiff tended to prove that there was a hole or depression on the side of the tie at that place next the north rail, from three to four and a half inches deep, four or five inches wide and six or seven inches long,—large enough to admit the heel and part of the foot of Wilson,—and that the mark of dragging the heel started from that hole. The evidence for plaintiff also tended to prove that there were a great many weeds between the rails, some of them eighteen inches high above the ballast, and that there were weeds in the latchets of Wilson's shoe where he was dragged through them. The circumstances tending to prove a knowledge of such conditions on the part of the respective parties or to charge them with knowledge were before the jury, and it was not error for the court to refuse to withdraw the issue from the jury.

Complaint is made that the court refused to allow defendant to prove that the side-track was ballasted in the usual and customary manner. There was no complaint of the general condition of the ballast, but plaintiff herself proved it to be level, with the exception of this hole. As the manner in which the track was ballasted was not in controversy, evidence that it was done in the usual and customary manner was not proper.

The condition of the track was the subject of much conflicting testimony. The claim of the plaintiff was, that Wilson, when he went before the moving cars, stepped in the alleged hole and fell down, and the claim of the defendant was that he went in there with a pin, which was afterward found lying on the track, to put it in the draw-bar, and that he dropped the pin, stooped down to pick it up and was run over. The evidence on the part of the defendant tended to prove that there was no hole or defect in the track further than the print of a heel and instep of a shoe in the cinders next the tie where the beginning of the mark was, and that it continued from there just deep enough to show that something had been

dragged along in the cinders and gravel. With reference
to the weeds, there was no controversy as to the exist-
ence of some weeds between the rails. They were what
are commonly called "rag weeds," but there was a sharp
conflict in the evidence as to whether they were many
or few, and as to their size. The evidence for the de-
fendant was that they were few and scattering, the tall-
est not over a foot high, and what few there were had
been burned and whipped off by the switch engine. Both
parties took photographs of the track soon after the ac-
cident and identified them at the trial. The plaintiff did
not offer in evidence the photographs taken and identi-
fied on her behalf, but the defendant offered the photo-
graphs taken by it, together with the testimony of the
person who took them that he was a photographer by
occupation, that he had been engaged in that business
for twenty years, that he was directed to make true like-
nesses of the tracks,—the truest he could,—and that the
photographs were true representations of the premises
shown in them. He also testified from what points they
were taken, and two other witnesses testified that there
had been no change whatever in the tracks, weeds, bal-
last or conditions after the accident up to the time the
photographs were taken. The court excluded the pho-
tographs. Each party had caused the place to be ex-
amined by witnesses and their testimony was conflicting.
The trial was the next year after the accident, when the
weeds were gone and the condition changed, and the ques-
tion is whether, under those circumstances, the defendant
was entitled to the benefit of photographs as evidence.

The general rule is, that photographs stand on the
same footing as a diagram, map, plan or model, and that
a photograph is a legitimate mode of proving a condition
which can be shown by a representation of that sort. It
rests, to some extent, upon the credit of witnesses, in the
same way as a map, plat or plan; but that fact furnishes
no reason for excluding it as evidence. (1 Greenleaf on

Evidence,—16th ed.—546.) Each party has the same opportunity to offer evidence as to whether the picture correctly represents the appearances. The preliminary proof of the correctness of the picture, the ability of the operator and the accuracy of the instrument is addressed to the court, and it is not error to exclude photographs taken a long time after an accident, where the situation has been changed and the operator is shown to be inexperienced. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Monaghan*, 140 Ill. 474.) In this case the preliminary proof was full and complete, and the photographs are in the record and show a perfectly natural representation of railroad tracks and surroundings. There was nothing in the evidence nor in the photographs themselves tending to discredit their accuracy. Under such conditions, photographs of things which can not be produced in court as evidence are generally admissible in evidence, the same as a map or plan. (11 Am. & Eng. Ency. of Law,—2d ed.—539, and cases there cited.) In *Commonwealth* v. *Morgan*, 159 Mass. 375, it was held proper to admit in evidence a photograph of defendant for the purpose of showing that when it was taken he wore side-whiskers. In *Alberti* v. *New York, etc. Railroad Co.* 118 N. Y. 76, it was held proper to receive in evidence a photograph of plaintiff's limbs, and in *Duffin* v. *People*, 107 Ill. 113, a photographic copy of a note which had faded out was admitted in evidence. In this case the photographs were an important means of proving the condition of the track, and, under the circumstances, we think the defendant had a right to have the jury see them in connection with the other evidence, and it was error to exclude them.

The first instruction given at the request of the plaintiff, after correctly stating the duty of the defendant to use reasonable and ordinary care to provide a suitable and safe place for its servants to work, directed the jury to find the defendant guilty if they found, from the evi-

dence, certain facts stated in the instruction. The hypothesis of fact so stated, from which the court drew the legal conclusions of guilt and ordered a verdict, is as follows: (1) That Art M. Wilson was employed as a switchman by the defendant in the yards at Rankin; (2) that the defendant carelessly and negligently permitted a hole to be and remain upon the side-track in the premises in question; (3) that the same was dangerous to switchmen; (4) that the defendant had knowledge of the existence of said hole or by the exercise of ordinary care might have known it; (5) that while Art M. Wilson was in the usual course of his employment and in the exercise of due care and caution for his own safety, he, by reason of the said hole, caught his foot on a tie in the track and fell down and was run over by the defendant's car and afterward died of such injury. The fourth instruction given at the instance of plaintiff also ordered a verdict in her favor upon proof of certain facts. These facts were: (1) That Art M. Wilson was employed as switchman; (2) that defendant carelessly and negligently permitted the track between the rails to be grown up with grass and weeds; (3) that such grass and weeds were dangerous; (4) that Art M. Wilson, while in the usual course of his employment and while exercising due care and caution for his own safety, by reason of said grass and weeds caught his foot in the grass and weeds and was unable to free himself before the car struck and injured him, and died from such injury.

It was the duty of the defendant to exercise ordinary care to provide a reasonably safe switch track as a working place for Wilson and to exercise ordinary care to keep the track in a reasonably safe condition. At the same time, Wilson was held to assume the risks from defects which were known to him, where, as in this case, there had been no promise to repair the defect. If defects are obvious and open to the observation of every person of ordinary intelligence, and the evidence shows

that the employee has had full opportunities for such observation, it is sufficient to charge him with knowledge. (3 Elliott on Railroads, sec. 1312.) The duty and liability are the same with regard to the place of work and the appliances with which the work is done, and the rule is that the servant, in order to recover, must establish three propositions: First, the existence of the defect; second, that the master had notice thereof or in the exercise of ordinary care would have had knowledge of it; and third, that the servant did not know of the defect and had not equal means of knowing with the master. (*Goldie* v. *Werner*, 151 Ill. 551; *Howe* v. *Medaris*, 183 id. 288.) It is manifest that any instruction by which the court assumes, as a matter of law, to direct a verdict, must embrace these propositions, and neither of these instructions embraced the third. It is true that they require Wilson to have been in the exercise of ordinary care; but the rule prohibiting a recovery for a defect known to him which the defendant had not promised to remove does not rest upon the ground of contributory negligence on his part, but upon his contract under which he entered the service of defendant. In such a case it is not a question of negligence on the part of the servant, but of the risk assumed by him. (3 Elliott on Railroads, sec. 1311.) There was no complaint of the original construction of the side-track in this case or of the manner of such construction. One witness for plaintiff said that it looked like the hole had been there some days, and that aside from this hole the track was level. Another said that it had the appearance of having been there several days, but he could not tell how long. Another, that it looked as though they had scraped dirt off, and part of it was fresh where they threw the gravel off, and that part of the hole looked as though it was new and had been disturbed. The tendency of the evidence was, that if there was a hole there it was not made in the original construction but had been made recently. The question how long

it had been there and what knowledge the parties had of it was important. It is true, as contended by counsel, that if Wilson knew of the defect he must have known that it was dangerous. (*Chicago and Eastern Illinois Railroad Co.* v. *Knapp,* 176 Ill. 127.) But where the danger is obvious to a person of ordinary intelligence the law will charge him with knowledge of it. Where a person is old enough to comprehend a danger, and is familiar with the place and the location, his duty to exercise ordinary prudence and care would charge him with notice of it. In this case, plaintiff was bound to prove that the defendant had, or ought to have had, knowledge of the alleged condition, and that Wilson did not have, and did not have equal means of such knowledge. The instructions were wrong in directing a verdict without proof of the omitted fact.

The judgments of the circuit court and Appellate Court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting:

I do not concur in all the views expressed in this opinion, nor in the conclusion reached by it. Some of the positions taken are opposed to the law as heretofore laid down by this court. In my judgment the opinion of the Appellate Court, delivered upon the decision of the case, correctly disposes of the questions and issues involved. That opinion is as follows:

"Appellant was sued by appellee in this action on account of negligence, resulting in the injury and death of Art M. Wilson, appellee's intestate. The declaration, on two counts of which, only, issues were joined, charges that appellant negligently permitted grass and weeds to grow between the rails of its side-track at Rankin, Illinois, thereby rendering it dangerous and unsafe to couple and uncouple cars there, and that while Art M. Wilson, in the discharge of his duties as switchman for

appellant there, in the exercise of ordinary care for his own safety, was coupling cars, his foot caught in such grass and weeds and he was thrown down and injured by the cars, which injuries resulted in his death; and that in like manner his death was caused by reason of a hole in the ballasting of such side-track, in which deceased caught his heel. Trial by jury resulted in a verdict and judgment against appellant for $2000, which by this appeal it is sought to have reversed, various errors being urged, as alleged, to attain that object.

"Appellee maintained a side-track at Rankin, Illinois, which was used for switching purposes. It is clearly shown, though the evidence is conflicting in other phases of the case, that numerous weeds, called 'rag weeds,' grew between the rails of this side-track, and that at a place where deceased fell, a shallow depression existed by the side of a tie between the rails, and that the deceased, while acting in the line of his employment, on the night of August 23, 1898, went on the side-track to couple cars, and as the moving section of the train approached the standing car he stepped his left foot between the rails to set the coupling-pin and insert the link. Instantly the engineer received a signal to stop, and on doing so it was found that deceased had been caught by the wheels and dragged a considerable distance on the track, and his left leg crushed, from which injury he expired after a few hours. An impression, probably made by the heel of his shoe, extended the length of the distance he was dragged, from the depression or hole at the side of the tie where he stepped in. Much evidence was had relative to the size of this hole, but, independently of its size, it is well established such a place was there. To the credibility of a colored witness, who testified at the instance of appellee, much impeaching evidence was directed. It further appears, from the evidence, that deceased had been employed by appellant for six months, and that it was customary, in the performance of his duties in mak-

ing couplings with link and pin, to step one foot between the rails.   Appellant offered proof that the side-track was ballasted in the usual and customary manner, and objection being made to its introduction, the court sustained the objection, which action of the court is considered by appellant prejudicial error.   To the introduction of certain photographs offered by appellant the court also sustained objections, which is also presented to this court as error.   It is further urged that the court admitted improper and excluded proper evidence, and gave improper and refused proper instructions, and that a motion presented and an instruction offered at the close of appellee's evidence, and again at the close of all the evidence, in substance to exclude the evidence and direct a verdict for appellant, should have been allowed and given and was erroneously refused.

"The testimony of the colored witness,—a roving fellow,—was to the effect that he was present when the injury occurred and was then holding a lantern for the deceased, and as Wilson stepped between the rails his left foot went into a depression and he sank to his knees, where the wheels caught him.   The witness also stated that a few minutes after the accident he took parts of weeds from the shoe latchets of deceased.   In view of the character of the impeaching evidence offered against the credibility of this witness, it may be proper to discuss briefly the probative force of all the evidence exclusive of his testimony.

"When the deceased stepped with one foot between the rails to make this coupling, it so sufficiently appears that he was acting in the line of his employment in the usual and ordinary manner, under the circumstances then confronting him, that the ordinary mind is compelled to conclude that he was exercising that ordinary care for his own safety commensurate with the law of the land. Opportunities were there for producing just the accident which befell him,—a depression or hole and weeds grow-

ing about,—and it is not without the bounds of ordinary human knowledge to conclude, from all the circumstances in this record, that such was the cause of his death. Certainly it was the duty of the master to furnish reasonably safe premises for the operation of this business, and it was the duty of the jury to determine whether, at the time of the injury, the premises were so. In this they found against appellant, which, in the condition of the proof, must be taken as final. The proof tending to show that the condition of the ballast at this particular point was due to operations of other workmen of appellant who had charge of this track, it surely follows that appellant is chargeable with notice, coming at last within all rules prescribing its liability in such cases.

"As to the contention that it was error to exclude proof that the side-track was ballasted and maintained in the usual and customary manner, we need only revert to the issues to determine that the general condition of the ballast of the track was not open to the consideration of the jury. It was only material what such condition of the premises was at the particular point of this occurrence, clearly defined by the evidence. With that in view it was wholly proper and not error to sustain the objection.

"While the photographs offered by appellant may have been admissible, as is contended, yet it is not seen that they develop anything new or strengthen the proof for appellant. Their admission is ever subject to the discretion of the trial court, in view of other established facts, which, sensible of its obligation relative thereto, excluded them. We cannot hold that action of the court an abuse of that discretion. It was not prejudicial error.

"According to the views expressed here, sufficient proof tending to uphold the position of appellee was presented at the times motions to exclude the evidence and instructions to direct a verdict were made, to warrant submitting it to the jury. Such was the action of the court, and in it there was no error.

"It being urged that several instructions were improperly given for appellee and some improperly refused for appellant, the instructions complained of have been carefully examined. It is found that no substantial error exists in the instructions. They seem to state the law applicable to the case, and the principles contained in those refused were contained in others given.

"Finding no substantial error, the judgment of the circuit court will be affirmed."