## Montgomery Coal Co. v. Corwin E. Barringer.

1. PRACTICE—*Where the Jury Should Not Be Instructed to Find for the Defendant.*—Where the evidence fairly tends to prove the cause of action stated in the declaration, the jury should not be instructed to find for the defendant.

2. MASTER AND SERVANT—*Duty of Master to Furnish Servant a Safe Place to Work.*—It is the duty of the master to use reasonable care to furnish his servant a reasonably safe place to work in, and he is liable for the negligent performance of that duty, whether he undertakes its performance personally or through another servant.

3. SAME—*What Servant Must Show to Recover for Injuries Caused by Defects in Appliances.*—In order that a servant may recover for injuries caused by defects in appliances he must show that the master had notice or knowledge of the defect, or by the exercise of ordinary care ought to have known of it, and that the servant did not know of the defect and the danger thereof, and that he had not equal means of knowledge with the master.

4. SAME—*When Law Will Imply Master's Notice of Defects.*—The law will imply and infer notice on the part of the master of any defects

which by the exercise of ordinary care might have been known to the master.

5. Same—*Whether Master Has Notice of Defects a Question of Fact.*—Whether the master knew of the defect or could have discovered it by the use of ordinary care, is a question of fact for the jury.

6. Same—*What is Necessary in Order to Charge Servant with Negligence.*—In order to charge a servant with negligence, it must be shown that he knew or could have known, by the use of ordinary care, that the place where he did his work was dangerous.

7. Same—*Servant Not Bound to Make Examination for Latent Defects.*—While a servant must take notice of defects which are patent, he is not bound to make an examination for latent defects, and may act upon the presumption that the master has used reasonable care in preparing the place for his work, so as to make it reasonably safe.

8. Same—*Servant Must Notify Master of Danger, When Discovered.*—A servant upon discovering danger in his surroundings, must notify the master of such danger.

9. Same—*Duty of Master and Servant When Dangers Are Discovered.*—Where the servant discovers a danger he is bound only to notice and consider it with reference to his personal safety, while engaged in his then employment, and in case it renders the surroundings dangerous to him, to give notice of the fact to the master; while it is the duty of the master, after he had or should have had, notice of the defect and the consequent prospective danger to any of his servants who might then or thereafter be employed in the vicinity of such defect, to repair the same and make the surroundings safe.

10. Same—*Whether Danger is Imminent and Apparent is a Question of Fact.*—Whether the servant should be chargeable with notice of the danger, and whether the danger was so imminent and apparent that no man of ordinary prudence would have incurred it, are questions of fact for the jury.

11. Same—*Servant Does Not Assume Extraordinary Risks.*—A servant does not assume risks which are not ordinarily connected with the service, and which are due to a failure of the master to exercise reasonable care and prudence.

12. Same—*Servant Does Not Assume the Risk of the Master's Negligence.*—The servant does not assume the risk of the negligent omission of the master to provide him with a reasonably safe place to perform his work.

13. Instructions—*Where Essential Element Omitted in One is Contained in Others.*—Where the instructions, taken as a series, fairly state the law governing the case, the omission of an essential element in one of them will not be prejudicial error.

14. Damages—*Where $2,500 is Not Excessive.*—The plaintiff, as a result of the injury, suffered an opening in the skull three inches long by one inch wide. In healing, the scalp had been restored and the opening in the skull covered with cartilage, which will grow stronger as

time passes, and while the injury may or may not affect his ability to labor, in the future, he will be compelled to exercise extra care to avoid the slightest injury in the affected part, and there is a possibility that epilepsy or even insanity may in after years develop. *Held*, $2,500 damages not excessive.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Montgomery County; the Hon. WILLIAM M. FARMER, Judge presiding. Heard in this court at the May term, 1903. Affirmed. Opinion filed August 28, 1903.

AMOS MILLER and LANE & COOPER, attorneys for appellant.

JETT & KINDER, attorneys for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This was an action brought by appellee against appellant company to recover damages for injuries sustained by him while in the employ of appellant, at its coal mine. The trial in the Circuit Court resulted in a judgment for the plaintiff for $2,500, to reverse which defendant appeals to this court. The declaration consists of four counts.

The first count charges, in substance, that plaintiff was an employe of defendant; that plaintiff was directed by defendant to move coal in a car over a track into the boiler room of defendant; that said track passed under a structure or chute; that it was the duty of the defendant to keep a safe place for plaintiff to work, and to keep said chute in safe condition; that a hole in the floor of the chute, of the size of one foot square, was permitted so to remain; that plaintiff did not know of the defective condition of the floor of the chute, and that while he was upon said track, beneath said chute, using due care and caution, a piece of coal fell through said hole and struck against the head of plaintiff, fracturing his skull, etc.

The second count charges that plaintiff, while employed by defendant to labor at the upper end of the mine of the defendant, was directed to move a car loaded with coal, on the track below a bin under a chute, which chute had a hole

in the bottom; that plaintiff did not know of the hole, nor did the defendant inform him of it; that a piece of coal fell through it and struck him, etc.

The third count charges the same negligence, in permitting a hole to remain in the chute, etc.

The fourth count charges that plaintiff was commanded to work under said chute by the manager of defendant, and while working there, coal fell through the hole, etc., and crushed his skull, etc.

To the declaration appellant interposed a plea of not guilty. At the close of plaintiff's evidence, the defendant moved the court to peremptorily instruct the jury to return a verdict for the defendant, and at the close of all the evidence renewed the motion, both of which motions were overruled by the court.

The material facts involved in the case are substantially as follows: Appellee had been engaged for about eight months prior to the accident, as a "cager" at the upper landing of the tower of the mine, which was about twenty-five feet from the ground. On the day of the accident, one Lyerla, who had been employed by appellant to convey fuel into the boiler room by means of a push car, was taken sick, and the mine manager directed appellee to leave his regular employment and operate the push car, which work he had never before performed. The push car was operated upon a track which ran from beneath the wagon chute of the mine to the boiler room. The wagon chute into which the coal was dumped from the pit cars, was about five feet wide and was about five or six feet from the ground at the place where the coal was drawn out, and sloped thence to the tower, where it was about seventeen to twenty feet from the ground. The pit cars when loaded were taken from the cages and pushed over iron plates to a point where the wheels of the car would strike against the ends of iron rails, which were curved up so as to receive the wheels of the car, when the car would tip and the coal run into the chute. The cars had sills at either end, set on edge. The striking of the ends of these sills on the floor of the chute, when the cars tipped, had worn a hole in the

bottom of the chute immediately over the track on which the push car was operated, which was about five by seven inches in diameter.  About three hours after the appellee had begun work, and while he was pushing a car of coal toward the boiler room, a car of coal was dumped in the wagon chute, and a piece of coal weighing about a pound fell through the hole in the chute, striking appellee on the head and causing the injury in question.

The appellant contends that the peremptory instructions to find the defendant not guilty should have been given to the jury.

"Where the evidence fairly tends to prove the cause of action stated in the declaration, the jury should not be instructed to find for the defendant."    Hartrich v. Hawes, 202 Ill. 334.

First.   It is conceded by appellant that under the law it is the duty of the master to use reasonable care to furnish his servant a reasonably safe place to work; that this is a positive obligation resting on the master, and that he is liable for the negligent performance of that duty, whether he undertakes its performance personally or through another servant. (R. R. Co. v. Dudgeon, 184 Ill. 477; Const. Co. v. Howell, 189 Ill. 123; Coal Co. v. Clark, 197 Ill. 516; R. R. Co. v. Scanlan, 170 Ill. 106; Kewanee Boiler Co. v. Erickson, 181 Ill. 549.)

It is further conceded that a defect existed, by reason whereof appellee was injured.

In order to recover, however, it was incumbent upon appellee to establish, in addition to these facts, that appellant had notice or knowledge of the defect, or by the exercise of ordinary care ought to have known of it, and that appellee did not know of the defect and the danger thereof, and that he had not equal means of knowledge with appellant.   Appellant insists that there is not a scintilla of evidence to establish these propositions.   We can not agree with this contention.   The evidence shows that the hole had been in existence for at least two months, which warranted the jury in finding that by the exercise of ordinary care its existence might have been known to appellant.

" The master can not screen himself from liability by saying that he did not know of the defect; the law will imply and infer notice of any defects which by the exercise of ordinary care might have been known to the master." Consolidated Coal Co. v. Haenni, 146 Ill. 614.

The evidence also tends to show that prior to the accident, the witness Lyerla, on at least two occasions, told one Hess of the existence of the hole, and that it ought to be fixed. The mine manager, Bottomlee, testified that appellant had no " top boss," but that Hess was acting as " top boss, if you want to call him that." " He looked after things and helped to do anything that was required of him. If anything went wrong he helped to put it right. That was his duty." Ibid.

While there is a conflict of evidence upon the question, we think the jury was warranted also in finding that Hess was a vice-principal of appellant, and that notice to him was notice to appellant. Whether appellant knew of the defect, or could have discovered it by the use of ordinary care, was a question of fact for the jury. (McGregor v. Reid, 178 Ill. 464.) Appellee admitted that he had known of the defect for two or three weeks prior to the accident, but denied that he knew of the danger resulting therefrom to a person employed upon the track immediately beneath it. He testified that he had seen it from the top of the chute at the time he was employed as " cager," but denied that he had ever noticed or considered its position with relation to the track beneath the chute, or that he ever knew that coal had fallen through the hole to and upon the track. There could have been no danger to appellee by reason of the hole while he was employed on the top of the chute as " cager," and he therefore was not bound to consider it, or give notice of its existence to appellant, as it did not affect the safety of the place where he was then employed. It was not the existence of the hole, alone, that rendered the track beneath it unsafe, but, as we have said, it was the relative proximity and position of the hole to the track, that made the place where appellee was working

when injured, unsafe, and might properly be considered as a latent defect.

" In order to charge a servant with negligence, it must be shown that he knew, or could have known, by the exercise of ordinary care, that the place where he does his work is dangerous " R. R. Co. v. Knapp, 176 Ill. 127; R. R. Co. v. Driscoll, 176 Ill. 330; R. R. Co. v. Wilson, 189 Ill. 89; Himrod Coal Co. v. Clark, 197 Ill. 518; Hartrich v. Hawes, 202 Ill. 334, and this is a question for the jury.

We think the jury was warranted in finding that by the exercise of ordinary care, appellee could not have known that the defect rendered the employment in which he was engaged when injured, dangerous. His employment, lowering props, did not take him immediately under the hole, and he was not bound to take notice of defects which would not ordinarily affect his safety while engaged in the line of his regular employment.

Second.   Appellant insists that appellee was not in the exercise of ordinary care for his safety, in remaining beneath the chute when cars were dumped; that no prudent man would have done so, under like circumstances.   It is expressly denied by appellee that during the three hours he was at work beneath the chute, he became aware that the hole in the chute which he had noticed when working on the top as cager, was over the track, and the evidence will not warrant the assumption that by the exercise of ordinary care, he could have known it.

" While a servant must take notice of defects which are patent, he is not bound to make an examination for latent defects, and may act upon the presumption that the master has used reasonable care in preparing the place for his work, so as to make it reasonably safe." Lumber Co. v. Ligas, 172 Ill. 315.

The jury was, we think, justified in finding that appellee was in the exercise of ordinary care at the time he was injured, and the question was one for their determination, solely.

Third.   It is also contended that appellee can not recover, for the reason that he knew of the defect and continued at

work without giving notice of its existence to appellant
It is unquestionably the law that a servant, upon discover-
ing danger in his surroundings, must notify the master
of such danger. (Steel Co. v. Mann, 170 Ill. 200.)   The
respective duties and obligations devolving upon appellee
and appellant upon discovering or learning of the hole in
question, differed in this :   That appellee was bound only to
notice and consider it with reference to his personal safety,
while engaged in his then employment, and in case it
rendered the surroundings dangerous to him, to give notice
of the fact to appellant; while it was the duty of appellant,
after it had, or should have had, notice of the hole and its
position as to the track, and the consequent prospective
danger to any of its servants who might then or·thereafter
be employed upon the track beneath the chute, to repair the
same and make the surroundings safe.   As we have already
said, appellee denied that he was aware of the danger of his
surroundings.   Furthermore, the evidence tended to show ·
that appellant, through Hess, knew of the defect, and would
not have been more fully advised of it had it received
notice thereof from appellee.

Fourth.   Appellant's contention that, inasmuch as appel-
lee knew of the defect, and that the surroundings made the
place unsafe, as it claims, and with such knowledge volun-
tarily entered into and continued in the employment with-
out objection or complaint, he should therefore be deemed
to have assumed the danger thus known, is untenable, for
the reasons already stated.   We are unable to say from the
evidence, as evidently was the jury, that the dangerous
character of the place where appellee was working would
have been obvious to a person of ordinary intelligence.
(R. R. Co. v. Wilson, 189 Ill. 99.)   Whether appellee should
have been chargeable with notice of the danger, and
whether the danger was so imminent and apparent that no
man of ordinary prudence would have incurred it, were
questions of fact for the jury.   (R. R. Co. v. Wilson, *supra;*
Graver T. Works v. O'Donnell, 191 Ill. 236.)   A servant does
not assume risks which are not ordinarily connected with

the service, and which are due to a failure of the master to exercise reasonable care and prudence. (Himrod Coal Co. v. Clark, 197 Ill. 514.) The injury did not arise from a peril which was ordinarily incident to the work which appellee was employed to do, but the evidence tended to show that it arose from the negligent omission of appellant to provide him with a reasonably safe place to perform his work, and under such circumstances appellee can not be held to have assumed the risk. (Wrisley v. Burke, 203 Ill. 250.)

Upon a thorough and careful examination of the record, we are satisfied that the evidence offered by the plaintiff tended to prove that a defect existed, which rendered plaintiff's surroundings at the time he was injured, unsafe and dangerous; that the defendant had notice of such defect, or by the exercise of ordinary care should have had; and that while the plaintiff knew of the defect, he did not know, and could not have known by the exercise of ordinary care, the dangerous character of his surroundings. In Hartrich v. Hawes, 202 Ill. 334, it was held that an instruction to find for the defendant in an action by a servant for injuries, is properly refused where the evidence tends to prove the appliance in use was defective; that the defendant had notice of its defects, and that the plaintiff, while he may have known of the defects, did not know their dangerous character. The peremptory instruction offered by the defendant at the close of plaintiff's evidence was therefore properly refused. We are further of the opinion that the preponderance of all the evidence in the case fairly tends to establish actionable negligence on the part of defendant, and that the plaintiff is entitled to recover.

Fifth. Appellant complains of the giving of plaintiff's fourth and fifth, and the refusal of defendant's sixth and seventh instructions. We think defendant's seventh refused instruction is fully covered by its seventh given instruction. While plaintiff's fourth instruction is defective in that it undertakes to summarize the elements essential to a recovery, omitting the important element of assumed risk, and concludes by directing a verdict, we think the ele-

ment omitted is fairly covered by the fifth, tenth and eleventh instructions given for the defendant; and the same may be said as to plaintiff's fifth given instruction. Defendant's sixth instruction was properly refused because it required the plaintiff, if he knew of the defect, to report the same to the company, ignoring the fact that before this duty devolved upon him he must have knowledge of the danger resulting therefrom as well. We think the instructions, taken as a series, fairly state the law governing the case, and the jury could not have been misled by the omission referred to. (See Foresters v. Fitz, 181 Ill. 209.)

Sixth. The evidence shows that as the result of the injury, there was an opening left in the skull of appellee, three inches long by one inch wide; that in healing, the scalp has been restored, and the opening in the skull covered with cartilage, which will grow stronger as time passes; that while the injury may, or may not, affect his ability to labor, in the future, he will be compelled to exercise extra care to avoid the slightest injury to the affected part, and that there is a possibility that epilepsy, or even insanity, may in after years develop. We do not think the damages awarded are excessive.

There being no prejudicial error in the record, the judgment will be affirmed.