## City of La Salle v. Rebecca Evans.

### Gen. No. 4242.

1.  PREPONDERANCE OF EVIDENCE—*how determined.* The preponderance of the evidence is not necessarily with that side upon which the greater number of witnesses have testified.

2.  PHOTOGRAPHS—*value of, as evidence.* Photographs, when properly identified and connected with the event which they purport to portray, are evidence of a satisfactory and conclusive nature. (See reporters' note at conclusion of opinion.)

3.  EXCAVATIONS—*duty of municipality while engaged in making.* It is the duty of a municipality while engaged in excavating a public street, not only to provide, during the night time, the usual electric street lighting, but also to display danger signals or put up barriers so as to keep pedestrians from walking into such excavations.

Action on the case for personal injuries. Appeal from the Circuit Court of LaSalle County; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the April term, 1903. Affirmed. Opinion filed October 23, 1903.

THOS. F. DOYLE, for appellant.

SAMUEL P. HALL and BROWNE & WILEY, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an action on the case by appellee against the city of La Salle, for an injury received while passing along the sidewalk on the west side of Marquette street, in said city. The appellee recovered a judgment for $1,500 in the court below, and the city prosecutes this appeal. The sole grounds relied on by the appellant for a reversal of this judgment are that the evidence fails to show a right of recovery in the appellee.

On October 2, 1898, and prior thereto, the city of La Salle was engaged in making improvements in Marquette street; the street had been excavated as far north as the intersection of Marquette and Second streets; the excavation proceeded from the south toward the north, and at the point where the excavating had reached on the second day of October, 1898, there was a bank from eighteen to

twenty-two inches in height and extending across Marquette street from the northwest to the northeast corners of said street where the same intersected Second street. The object of the city was to pave this street with brick, and the excavation was necessary in order to get a solid foundation, which was made of crushed stone spread over the bottom of the excavation.

On Sunday night, October 2, 1898, about 8:45 o'clock, appellee left the church which she had attended that evening, which was north and west of Marquette street some two or three blocks; she lived south of Second street on the west side of Marquette street, and to reach her home from the church it was necessary for her to go east on Third street to Marquette, and south on the west side of Marquette toward her home. Her husband accompanied her until a short distance before she reached the intersection on Second street, when he left her and went by his barn to see after his horses, and the appellee continued south on the sidewalk on the west side of Marquette street. She was picked up a short time after this in an unconscious condition at the bottom of the excavation, near the northwest corner of Marquette and Second streets. That the appellee was injured by her fall into this excavation, and that she sustained serious damages, is not controverted; no question is made as to the cause of the injury nor the extent of it. The contention of the appellant is that the city of La Salle had erected barricades and put out danger signals at the intersection of these streets, where this bank caused by the excavation was; that in addition to the barricades, it is contended also that there was a high bank of earth and stone from two to three feet high along the border of this excavation. It is also contended that the appellee knew all about the condition of the intersection of Second and Marquette streets, and was well aware of the excavation that was being made, and also that there were electric lights suspended above the crossing, so that any person approaching the excavation, by the use of their faculties could easily see the dangerous condition

of the street. The effort of the appellant in its brief in this court has been directed to maintaining these several contentions by a discussion of the evidence; a large number of witnesses testify for the appellant as to the existence of the light at this crossing on the night in question, also to the barricades and the embankments, and to facts and circumstances from which it is sought to draw the inference that the appellee must have known of the condition of things that existed at the intersection of these streets. If the question of whether or not lights were burning at this crossing and the existence of the embankments and barriers was to be determined entirely from the number of witnesses who testified upon this question, it would appear that the clear preponderance of the evidence is in favor of the appellant, but there is evidence in the record which, in our opinion, outweighs the statements of appellant's witnesses who depend on their recollection of conditions that existed four years prior to the time when they testified.

Appellee introduced on the trial two photographs, designated as Exhibits ", A " and " B," which show the conditions that existed at the intersection of these streets, and where the accident occurred, which are of a very conclusive and satisfactory nature, and examination of these photographs shows beyond all controversy that at the time they were taken there was no embankment nor barrier along the west side of Marquette street near its intersection with Second street, but on the contrary, nothing is shown to prevent a pedestrian going south of the west side of Marquette street from falling into the excavation, in precisely the way it is claimed that the appellee did fall. The evidence, as to these photographs and the time when they were taken, was given by Mary Gurrad, who testified that she lived in La Salle; had lived in La Salle for 22 years; that her father was a photographer, and he died two years ago; that he was a photographer on the 2d and 3d days of October, 1898. She says that she heard of Mrs. Evans' injury on the Sunday evening it occurred, or the following Monday morning; she

identifies the two pictures, " A " and " B," and says that she saw the proofs on the evening of the day after Mrs. Evans was injured, and that her father took these two photographs on Monday morning early, the morning after the evening when Mrs. Evans was injured; that they were taken early in the morning, and that she saw them developed that same evening. Among other questions she was asked: Q. " Do you want to be understood now as swearing positively, with your memory alone to go on, that this picture was taken on Monday following Mrs. Evans' accident and developed Monday night?" A. " I am." Q. " Will you swear that it was not Tuesday or Wednesday?" A. " Certainly I will, I would swear that it was Monday." Q. " What, if anything, fixes it in your mind at this time other than what you might have stated?" A. " Why, the fact of Mrs. Evans being injured, and the pictures taken of the place where she was injured."

This witness was not contradicted, or otherwise impeached and it will be seen that the evidence could not well be more positive and certain than is hers as to the fact of the photographs being taken by her father on the morning following the accident. If this is true, and the photographs fail to show the existence of any barricades or embankment, then the only way to harmonize the evidence of appellant's witnesses who testify to the existence of these conditions, is to suppose that some time during the night preceding the taking of the photographs, the barriers and the embankment had been removed; this supposition is unreasonable. It is not shown that any work was done, or the conditions otherwise changed, after the time of the accident and before the taking of the photographs, and had such been the case, it would have been within the power of the appellant to have produced the proofs of that fact, which has not been done. It is therefore more reasonable to conclude that the witnesses, who testified to the existence of the embankment and the barricades, must have been mistaken as to the time when these conditions existed. Aside from the testimony afforded by the photographs, quite a number of witnesses

City of La Salle v. Evans.

testify for the appellee that the photographs represent clearly the condition of things as they remember it to have been on the night of the accident, thus affording corroboration of the photographs on this question. It is contrary to reason to suppose that the appellee would climb upon an embankment two and a half or three feet high, or cross over a barricade, rather than to go around it, when it was suggestive of danger that could be easily avoided. It is suggested that whatever probative force there may be in the photographs so far as the same tend to contradict the appellant's theory of the embankment and barricades, that they do not have any effect upon the evidence with respect to the lighted condition of this crossing, and that the evidence for the appellant stands alone upon this point. We concede that the weight of the evidence tends to show that there were electric lights at this crossing, and that they afforded more or less light at the place where the accident occurred, but that, in and of itself, is not sufficient to shield the appellant from liability, if there was nothing else to guard the appellee from the possible danger of falling into the excavation. It was the duty of the city, not only to have electric lights there, but also to display danger signals, or to put up barriers, so as to keep pedestrians from walking into the excavation. The mere fact that there may have been a light which would be sufficient to disclose the danger to a person who was going along with their eyes fastened upon the walk is not enough. Our Supreme Court in Aurora v. Rockebrands, 149 Ill. 402, which was a case somewhat like the one now under consideration, used the following language :

" It will not do to say that an electric light upon a street, however bright, can always take the place of danger signals where the temporary obstructions are placed upon the streets. The object of a danger signal is to direct attention to the particular object, and warn those approaching of something unusual. The electric light may enable those passing over the streets to see their way and avoid others and things generally found upon the streets, but they give no special warning whatever, and as is well known from experience, are often deceptive and bewildering."

This language is applicable to the case at bar. It is shown that the place where the appellee fell was very near a large post, probably an electric light pole; the appellee must have fallen within a few feet of this pole. It is also shown that just north and west a few feet inside the yard at the Clancy corner, there was a large tree with its branches extending toward the sidewalk. It is not at all improbable that if the electric light was burning near this crossing, that the shadow of the pole and the tree that was cast upon the sidewalk may have made it so dark that a person would not distinguish the excavation from the shade that was cast before her. Upon the evidence of the whole case, we do not feel justified in reversing the case, because the verdict is not sustained by the evidence.

The judgment is affirmed.

*Affirmed.*

REPORTERS' NOTE.—A photograph which is calculated to mislead is incompetent. Iroquois Furnace Co. v. McCrea, 191-340. Likewise a photograph is incompetent, unless accompanied by clear proof that the conditions at the time it was taken were identical with those existing at the time of the accident. Wabash Railroad Co. v. Farrell, 79 Ill. App. 508. A photograph of the plaintiff showing his personal appearance nine years before the trial is incompetent because of remoteness. City of Rock Island v. Drost, 71 Ill. App. 613. But one taken soon after the injury sued for, is competent, notwithstanding it may excite sympathy. People's G. L. & C. Co. v. Amphlett, 93 Ill. App. 194. A photograph, however, must not be admitted unless it throws some light on the controversy. Schneider v. North Chicago St. R. R. Co., 80 Ill. App. 306. A photograph, however, which shows the situation and surroundings where an accident occurred is competent. Chicago & Alton R. R. Co. v. Myers, 86 Ill. App. 401; Fitzgerald v. Hedstrom, 98 Ill. App. 109; Wabash R. R. Co. v. Prast, 101 Ill. App. 167; City of Chicago v. Vesey, 105 Ill. App. 191. But such a photograph taken a long time after the accident occurred is incompetent. Chicago & Alton R. R. Co. v. Corson, 198 Ill. 98. A photograph likewise, of an object incapable of production in court is admissible. Lake Erie & Western R. R. Co. v. Wilson, 189 Ill. 89. The preliminary proof essential to the introduction of any photograph is addressed to the court. Chicago & E. I. R. R. Co. v. Lawrence, 96 Ill. App. 635.