## Charles Levi, Appellee, v. Illinois Box Company, Appellant.

1.  MASTER AND SERVANT—*when doctrine of assumed risk applies.* If the device which caused the injury was simple and easily understood by any person of ordinary intelligence; if, likewise, the alleged defects were open and obvious and the dangers thereof equally plain and obvious; and if, further, the evidence shows that the plaintiff thoroughly understood and appreciated them, the doctrine of assumed risk applies and a recovery in favor of the servant will not be sustained.

2.  MASTER AND SERVANT—*what does not prevent application of doctrine of assumed risk.* As to defects and dangers which are open and obvious, which are presumed to be known and appreciated by the servant, the law will not permit a recovery even though such servant testified that he did not see such defects and did not comprehend the dangers thereof.

3. MASTER AND SERVANT—*what essential to recovery for failure of former to furnish safe place.* In order for a servant to recover for the failure to furnish a reasonably safe place in which to work or a reasonably safe appliance with which to work, he must allege and prove want of knowledge on his part of the defects of the alleged device. This rule does not arise upon the ground of contributory negligence upon the part of the servant but upon the doctrine of assumed risk.

Action in case for personal injuries. Appeal from the City Court of Alton; the Hon. J. E. DUNNEGAN, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed April 15, 1911.

**Statement by the Court.** In the manufacture of boxes in the city of Alton, Illinois, the appellant uses four machines called sand machines, driven by steam power. These wheels resembled in appearance large grind stones, are about forty-eight inches in diameter and were numbered from 1 to 4. Upon their faces, as distinguished from their edges, was placed coarse sand-paper, thereby making their faces actual grinding surfaces. Their use was to grind down the edges of common boxes to make the edges smooth and to present a marketable appearance. Tables of the length of the diameters of the wheels and fastened to the frames of the machines were set next to the faces of the sand-wheels, upon which the boxes were placed to be ground. The tables were extended sixteen inches outward from the wheels. Nos. 3 and 4 were attached to the opposite ends of an axle in the middle of which was a pulley, over which ran a belt connected with the steam-driven main shaft, by which the two sand-wheels were revolved about 400 revolutions per minute towards the operators. Charles Levi, plaintiff, was employed on December 2, 1909, by appellant to grind and polish boxes at sand-wheel No. 4; and while grinding down a small board about twelve inches long and about six inches wide, with which to patch his tool box, the board tipped over against the face of the wheel and between the space between

the wheel and the table and ground off the fingers of his left hand, except the first finger. In attempting to pull out his left hand, the knuckles of his right hand were also ground severely.

The declaration charges in the first count that the defendant negligently permitted said sand-wheel to be and remain in a dangerous and defective condition by allowing the table to be set back at too great a distance from the face of the sand-wheel; and in the second count, that defendant negligently failed to warn plaintiff of the defects and dangers of the machine, which were known to the defendant but unknown to plaintiff. In a trial by a jury a verdict and judgment were rendered against appellant and in favor of appellee for $2,500.

WISE, KEEFE & WHEELER, for appellant.

FERNS & SUMNER, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

The first contention of appellant in this appeal, that the plaintiff was injured through one of the risks of the employment which he assumed, must be sustained; and, as it is a decisive point in the case, the other points raised will not be discussed. The evidence in this record discloses clearly that the sand machine upon which the plaintiff was injured was a very simple device and easily understood by any person of ordinary intelligence after a few minutes' inspection of the same. The alleged defects, if they existed, were open and obvious; and the dangers thereof to the operator were equally plain and obvious, and the evidence shows that plaintiff thoroughly understood and appreciated them. Walter Williams, for appellee, testified: "The sand-wheel isn't a complicated machine; it has a table and platform, and in front of this the sand-wheel, the sand-wheel and bed

of the table forming right angles. The sand-wheel revolves. The distance could be seen between the edge of the platform and the sand-wheel. A person wouldn't have to be an experienced man to see it.'' John Havens, for appellee, said: ''The operating part of the machine consisted simply of a revolving shaft and the table. Everything was in plain sight. The sand-wheel in plain sight, table in plain sight and the space between the sand-paper on the wheel and the table in plain sight, and anyone who worked at it could see it. They could acquire knowledge of it in a moment by simply looking at it.'' Edward Sanford, another witness for appellee, testified that everything about the machine is in open view, and that it was a simple machine, ''as simple as you could get a machine.'' He also said that the space between the table and the wheel is plainly to be seen and that the workman's eyes while at work are directly toward the space. Frank Clark, for appellee, testified that any danger that was connected with the wheel could be easily seen, and that the wheel, the table and the space were in open view, and all were apparent to any ordinary man and could be seen in a moment. The appellee testified as follows: ''We finished up all the boxes we had; I went to work to clean up around there; there was a place in my table where I kept my tools that was in bad condition; I thought I would fix that. I took a board about twelve inches long and about six inches wide and went to put it up against the wheel and the board tipped over and caught these two fingers between the table and the sand-wheel. I put in my other hand to get the left out, that is how I caught the other hand. * * * It was the distance between the table and the wheel that caused the board to tip and catch my hand. I did not discover that trouble until I was hurt.'' He also says on cross-examination that he had worked on this sand-wheel altogether about ten or eleven days and had worked on sand-wheel No.

1, similar in construction, for a month before that and had worked at other kinds of work near these wheels for a considerable time. He gives a minute and comprehensive description of these wheels in his testimony, showing clearly that he had a complete knowledge of them and how they were operated. He then says he had seen the wheel at rest and knew the character of the sand-paper on the wheel, had seen it grind down the edges of the boxes and knew that if he got his hand against the wheel it would grind his hand, and that the natural tendency of that wheel would be to pull the article down when grinding it. He says he was familiar with the machine and that its conditions had not changed at any time that he worked on it, and that in operating it his face would be within sixteen inches of the wheel; and that he could see and have a full view of all the conditions there. There is no question in this record about the simplicity of this sand-wheel and about the open and obvious character of the dangers and defects of the same, except the bare statement of the plaintiff that he did not observe the width and danger of that space until he was injured. As to the space between the sand-wheel and the table, the witnesses are in hopeless conflict, their evidence as to the space varying all the way from seven-sixteenths of an inch to two inches in width. As the defect and the danger complained of by appellee were open and obvious he is presumed to have full knowledge of them. As to such defects and dangers, the law will not permit an employe to recover because he did not actually see them and can say that he did not comprehend them until he was injured. He is chargeable with all the knowledge that an ordinarily intelligent person would obtain by the use of ordinary care. "If the injury was the result of obvious defects in the apparatus with which the servant was working, or from causes known to him, or which he could have known with the exercise of due care he can not recover.  *  *  *  If the danger is such that

a person of ordinary intelligence would know what would naturally follow from the defective condition, and he has knowledge of the defective condition, knowledge of such condition carries knowledge of the danger and the risk is assumed.'' E., J. & E. Ry. Co. v. Myers, 226 Ill. 358, 364 and 365. See also McCormick H. Mch. Co. v. Zakzewski, 220 Ill. 522, 530; L. E. & W. R. R. Co. v. Wilson, 189 Ill. 89; C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492.

In order for a servant to recover of the master for a failure to furnish a reasonably safe place in which to work, or a reasonably safe appliance with which to work, he must allege and prove want of knowledge on his part of the dangers of the alleged defect. This rule does not rest upon the ground of contributory negligence upon the part of the servant, but upon the doctrine of assumed risk. L. E. & W. R. R. Co. v. Wilson, *supra;* C. & E. I. R. R. Co. v. Heerey, *supra;* and Swift & Co. v. Gaylord, 229 Ill. 330.

No duty rested upon the appellant company to warn Levi of dangers which were patent to persons of ordinary intelligence. C. & A. R. R. Co. v. Bell, 209 Ill. 25; Am. B. S. & S. F. Co. v. Toluszis, 125 Ill. App. 622.

Under the rules of law applicable to this case there is no theory upon which a recovery by appellee can be based. He is chargeable with full knowledge of the defects of the appliance in question and of its dangers, and therefore assumed the risk by continuing to work thereafter with the appliance without complaint. The judgment of the lower court is therefore reversed without remanding.

*Reversed.*

Finding of facts to be incorporated in the judgment:
We find as ultimate facts that appellee had notice of the alleged defects of the sand-wheel machine charged in his declaration and that he appreciated the dangers thereof at and before the time of his alleged injury and that he assumed the risk thereof.