## Springfield Boiler & Manufacturing Company v. Roscoe E. Parks.

1. ASSUMED RISK—*when question of, does not arise.* The question of assumed risk is not presented in a case where it appears that complaint of danger had been made by the servant and a specific command and an assurance of safety had been given by the master. In such a case the question is one of contributory negligence, depending upon whether the danger was so great that a person of ordinary prudence would not have encountered it.

2. ARGUMENT OF COUNSEL—*when improper, not ground for reversal.* An improper argument by counsel is not ordinarily ground for reversal where objections thereto were made and sustained.

᛬ Action on the case for personal injuries. Appeal from the Circuit Court of Sangamon County; the HON. JAMES A. CREIGHTON, Judge,

presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed November 24, 1905.

PATTON & PATTON, for appellant.

STEVENS & STEVENS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit by appellee, a minor, by his next friend, against appellant to recover damages for personal injuries. The declaration contained two counts, the first alleging that appellant negligently furnished an improper and unsafe swing board on which appellee was required to work, and the second alleging that appellee was inexperienced in the particular work in which he was engaged; that the foreman of appellant had knowledge of such inexperience of appellee and negligently ordered appellee to use a certain swing board in descending a stack, for the purpose of doing certain work therein, and negligently assured appellee he would incur no danger in using said swing board; that appellee relying on such assurance of safety, used said swing board, and while making the descent thereby into the stack, and while exercising ordinary care for his safety, was injured, etc.

At the close of appellee's evidence and again at the close of all the evidence, appellant moved the court to instruct the jury peremptorily, which motions were denied. Thereupon appellee withdrew the first count of the declaration from the consideration of the jury. Appellant then renewed its motion for a peremptory instruction, and such motion was again denied. The trial resulted in a verdict and judgment against appellant for $2,500.

For about three months and a half prior to August 16, 1904, appellee had been employed by appellant as a laborer and boiler-maker's helper in its shops at Springfield. A few days prior to August 16, 1904, appellee was informed by appellant's superintendent, A. C. Voss, that owing to the slackness of work in the shops it would be necessary to lay off some of the hands for a while, appellee among

others. Appellee told Voss he did not like to lose any time and inquired whether there was not some place for him to work. Voss then told appellee that appellant intended to begin the erection of some stacks at the power house of the Springfield Electric Light and Power Company, within a few days, and if appellee could do that kind of work he (Voss) would find work for him there. Appellee was then temporarily put to work in appellant's sheet iron shop.

There is a slight discrepancy in the testimony of appellee and Voss as to what was said on the occasion referred to, relative to the experience and ability of appellee to work on the stacks. Appellee testifies that Voss asked him if he (appellee) had ever done that kind of work, referring to the erection of stacks, and that he (appellee) replied, he had not, but he had helped the carpenters put up false work for the engine base; that that was the only high work he had ever done. Voss testifies, he inquired of appellee as to the nature of the work appellee had done at the power plant and that appellee replied he had helped on the scaffolding aloft and was in the habit of going up high. Voss further testified, "I kept him (appellee) because of his telling me he could work aloft."

When appellee commenced work on the stacks, August 16th, brick stacks thirty-five feet in height and extending to within ten feet of the roof of the power house had been completed, and upon these the metal portion of the stacks extending about twenty-five feet above the roof, was erected by riveting sheets of iron in courses of five feet. On the inside of the stacks scaffolding was constructed and built up as the work progressed, upon which the men employed stood and riveted or bradded the rivets put through holes in the sheets by men on the outside of the stacks, who also held a hammer against the heads of the rivets. Two devices were employed to hold the men while at work on the outside of the stacks,—a cage and a swing board. The cage was an iron basket made of rods and straps of iron, on one side of which were two irons projecting above the top and bent at the top in the shape of a hook in which

was a small roller. When in use the roller hooks were placed over the top of the iron sheet, by means of which the cage could be rolled around the stack to enable the occupant to reach the rivets. The swing board consisted of an inch and a quarter board, two feet long, sixteen to eighteen inches wide, cleated on the bottom to prevent splitting. In each of the four corners of the board an inch or inch and a quarter hole was bored, an inch from each end and an inch from each side. Two pieces of five-eighths rope, each about ten feet long, were then run through eyes, an inch and a half in diameter, in the end of two hooks made of five-eights inch iron, and the ends of each rope inserted in the holes in the end of the board, one on each side, and securely tied at the bottom of the board. The ropes ran freely through the eyes in the hooks and through the holes in the board. When in use on the stacks, the hooks were placed over the top of the sheets or plates and the board swung below. Upon this board the man sat, usually with his face to the stack, his knees between the stack and the inside edge of the board, and his feet suspended.

As the work progressed, appellee used the cage and another employee used the swing board, except on possibly two occasions, when appellee used the swing board in places in which the cage, on account of its size, could not be used. It is also very probable that after the stacks had progressed to a height of ten or fifteen feet above the roof appellee and the other employees used the swing board in going to and returning from their work at the top of the stacks. Appellee insists, however, that he did not use the swing board for that purpose, but climbed the rope, which hung from the arm of the gin pole at the top of the stack, hand over hand. During the first week that appellee worked on the stacks, one William Cook was appellant's foreman of the gang, and after that time Charles Gue acted as such foreman. Appellee testifies that on the first morning Gue came to superintend the work he asked appellee if he had ever worked on stacks before, and that he (appellee) replied, "No."

On the morning of the accident, September 3, 1904, the stacks were practically completed, there being but a small amount of riveting to be done on the crown of the stacks, the stacks to be fastened together with angle irons, and some iron plates to be taken out at the bottom of the south stack, from which the scaffolding had been removed. There was a scaffold in the north stack, the gin pole being placed in the top of the scaffold, with the pulley arm projecting over the edge of the stack, and the rope through the pulley. Appellee and Foster, a fellow-workman, were at the top of the stacks engaged in completing the work, appellee on the south stack and Foster on the north stack. When the crown of the stacks had been riveted and the stacks fastened together, it remained to take out the plates at the bottom of the south stack. Appellee testifies that Gue then said to him, "You go down, you are already there on the stack, you go down and take those plates out;" that appellee replied he didn't want to go down on the swing board; that Gue wanted to know what was the matter, and appellee responded, he didn't like the way the ropes were fixed, didn't like the way they were run through those rings, didn't think it was safe; that Gue then said, "Go on, there is no danger, it will be all right when we get some weight on it." Gue denies that the conversation detailed by appellee took place. It is undisputed, however, that appellee tied the pulley rope into the hooks of the swing board, and got onto the swing board with his feet toward the center of the stack and his left side and back toward the north side of the stack, grasping the ropes with each hand, and also carrying a hammer in his right hand. In this position appellee was being lowered by his fellow-servants, and had descended about two feet, when the corner of the swing board caught on a projecting rivet and tipped up, causing appellee to slip off the seat. Appellee retained his hold on the ropes and called for help, but before help came his strength was exhausted and he fell to the bottom of the stack and was seriously injured.

It is insisted by appellant that the court erred in refusing

to give the peremptory instruction offered, first, because it sufficiently appears that appellee assumed the risk of using the swing board, and that he was negligent in the manner of using it, and second, because there is no proof in the record tending to sustain the charge in the declaration that appellant's foreman, Gue, knew appellee was inexperienced, or the charges that appellee was in the exercise of ordinary care for his own safety.

The question of assumed risk is not presented in the case at bar as it would have been if there had been no evidence of a complaint by appellee, and of a specific command and assurance of safety by appellant's foreman, and if appellee had been injured while using the swing board, as he did on two occasions, while driving rivets.

In the case of a promise to repair, or of a command, the question of assumed risk does not arise, but in such case the question presented is one of contributory negligence, depending upon whether the danger was so great that a person of ordinary prudence would not have encountered it. C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492.

True, the swing board is a device, simple in construction, but it does not necessarily follow that a person inexperienced in its use must, therefore, be held to know and understand the precise method of its operation when in use. It may be apparent that the ropes will very readily slip through the rings in the hooks and the holes in the board, when there is no weight on the board, but when a person is seated on the board and the ropes are stretched tight it cannot be so easily determined how far he may move from the center of the board either to the side or to the end without danger of tipping the board sufficiently to cause him to fall. Neither must an inexperienced man using such swing board necessarily know, with any degree of certainty, whether, in order to best maintain his equilibrium, he should hold on to both ropes on each side, and, if so, with how tight a grasp, or only one rope on each side, and if so, which.

Upon the evidence in this record, the question as to

whether appellee was guilty of contributory negligence in using the swing board as he did, or in using it at all in obedience to the command of appellant's foreman, was not one of law for the court, but one of fact to be determined by the jury.

There is evidence in the record tending to show that appellant's foreman, Gue, knew appellee was inexperienced. He was told by appellee that he (appellee) had never worked on stacks before. Furthermore Gue testifies that the swing board in question was one commonly used in constructing stacks, and was considered safe. When appellee expressed a doubt as to its safety, because of the manner in which the ropes ran through the eyes of the hooks, it must have been evident to Gue that appellee was inexperienced in the use of that common appliance. The court did not err in refusing to give the peremptory instruction requested by appellant.

It is contended that the first, second and third instructions given on behalf of appellee were prejudicially erroneous. The first and second instructions predicated a right of recovery upon evidence sustaining the second count of the declaration. It is said by counsel that the instructions by reference to the declaration gave to the jury a complete hypothesis of facts, finding which they should render a verdict for the plaintiff, and that as the declaration contains no allegation denying the assumption of risk, the instruction is improper, because it omits an element essential to a recovery. The allegations in the second count of the declaration, that appellee was inexperienced, that appellant's foreman, Gue, knew appellee was inexperienced, that he negligently ordered appellee to use the swing board, and that he negligently assured appellee he would incur no danger in such use, expressly negative the assumption of risk by appellee. The declaration in the case at bar is clearly distinguishable in that respect from the declaration involved in Illinois Terra Cotta Lumber Co. v. Hanley, 214 Ill. 243, where a like instruction was held to be erroneous.

The third instruction merely defines the care and caution

appellee was required to exercise for his own safety on the occasion and at the time of the injury complained of as that degree of care and caution which an ordinarily careful and prudent person would have exercised under the same or similar circumstances, and is not open to the criticism urged against it, that it assumes that an ordinarily prudent person might find himself in the situation in which appellee was on the occasion and at the time of the injury. Furthermore, the seventh instruction given at the request of appellant is in substantially the same language as the one complained of.

It is next urged that the verdict is against the manifest weight of the evidence in the case. Conceding that appellee, in addition to the two occasions on which he had used the swing board while riveting on the outside of the stacks, had been lifted to and lowered from his work on top of the stacks by the same means, it does not necessarily follow that he must be held to have been experienced in the use of the swing board in descending on the inside of the stack. The outside of the stacks presenting a comparatively smooth surface, free from projections, did not present the conditions involved on the inside of the stacks, where the rivets and top edges of the sheet iron projected. It may well be, appellee did not appreciate the precise effect on the swing board in case the edge of the board came in contact with a projection in the stacks, while descending. As to whether the command and assurance of safety were given to appellee by appellant's foreman, Gue, the finding of the jury must be held to be conclusive in this case. Upon these questions, appellee and Gue directly contradicted each other, the witness, Foster, testifying that he had no recollection on the subject. Gue, however, seems to be impeached by the witnesses, Holmes and Robinson, who testify that immediately after the accident, Gue said in their presence, that he had sent the boy down the stack on the swing board, that he had represented to Parks that he (Parks) could use the swing board in making the descent in safety, that Parks would not have gone down if he (Gue) had not sent him,

and that he (Gue) was sorry he told him (Parks) to go.   A careful consideration of the evidence in this case impels us to the conclusion we are not justified in holding that the verdict is against its clear preponderance.

Lastly, it is insisted that the closing argument of counsel for appellee was so improper as to constitute ground for reversal.   In so far as counsel for appellee, in his closing argument to the jury, sought to predicate a right of recovery on the negligence of appellant in furnishing an unsafe or defective device, as alleged in the first count of the declaration, and taunted appellant's counsel for objecting to that line of argument, his remarks were improper.   The first count of the declaration had been withdrawn, and counsel for appellant very properly objected to argument based upon it.   The trial court, however, promptly sustained the objections interposed and reproved appellee's counsel for indulging in the line of argument and remarks referred to.   The court also made it clear that the charge of negligence in furnishing an unsafe or defective device was not in the case.   It is not claimed that the damages awarded appellee are excessive, and as we are of opinion that the verdict was not influenced by the improper argument and remarks of counsel for appellee, we are constrained, notwithstanding our strong views on the subject and our disposition to hold counsel to a strict responsibility in the conduct and argument of a case, to hold that no harm resulted to appellant in this case from the improper argument and remarks of counsel for appellee.

The record is substantially free from error, and the judgment will be affirmed.

*Affirmed.*