CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY

*v.*

CHARLES J. HEEREY, Admr.

*Opinion filed June 16, 1903—Rehearing denied October 7, 1903.*

1. MASTER AND SERVANT—*servant assumes ordinary risks.* A servant of sufficient age and experience is charged with notice of the ordinary conditions under which the business is conducted and of its ordinary risks, and will be presumed to have notice of and to have assumed all such risks which to a person of his experience and understanding are patent and obvious.

2. SAME—*when servant assumes risk of obvious defect.* A servant assumes the risk of a defect so obvious that in the exercise of ordinary care he would discover it, if he continues in the employment without complaint and without any assurance by the master that the defect will be repaired or the danger removed.

3. SAME—*servant not obliged to make inspection for defects.* A servant is not required to search for latent defects and dangers, and does not assume the risk of defects of which he has no knowledge or which he cannot discover by the use of ordinary care, and of which the master has, or ought to have, knowledge.

4. SAME—*a servant cannot assume a fact against his own knowledge to the contrary.* A servant may assume that the master has performed his duty in using reasonable care to furnish him reasonably safe machinery and appliances, but he cannot assume such fact against his own knowledge to the contrary.

5. SAME—*rule as to knowledge of danger from defect.* To preclude a recovery by a servant for injury from a defect known by him to exist, it is necessary that he know of the danger to which such defect exposes him, but if such danger would be obvious to a person of ordinary intelligence the law charges him with notice thereof.

6. SAME—*locomotive fireman is not required to examine engine for concealed defects.* A locomotive fireman is not required by law to inspect his engine to see whether the safety chains between the engine and tender are coupled, and if the evidence as to whether he knew they were uncoupled is conflicting, the questions of his knowledge of the defect and of the danger consequent thereon are properly left to the jury.

7. EVIDENCE—*rule as to burden of proof in personal injury case.* In an action by a servant against the master for personal injury the plaintiff has the burden of proving that he was in the exercise of ordinary care for his safety and that he did not assume the risk; but in this he may be aided by the presumption that a person does not voluntarily incur danger or risk of death.

8. Negligence—*assumption of risk is independent of exercise of care.* A servant who has assumed a risk as incident to his employment, or by remaining in the service after notice of the defect and without any promise to repair, coercion or other circumstance which removes the question of his assumption of the risk, cannot recover damages for an injury arising from such risk, notwithstanding he was exercising proper care for his safety when injured.

9. Same—*when question of assumed risk has no application.* In case a servant is injured as a result of obeying a direct command of the master, the question is not one of assumed risk, but of the exercise of that degree of care which an ordinarily prudent person would have exercised under the same circumstances.

*C. & E. I. R. R. Co.* v. *Heerey,* 105 Ill. App. 647, reversed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Theodore Brentano, Judge, presiding.

Pam, Calhoun & Glennon, (W. H. Lyford, of counsel,) for appellant.

James C. McShane, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

Joseph Heerey, a fireman on one of appellant's engines, was killed on the evening of October 21, 1898, near Kensington, Illinois, by the parting of the engine and tender as he was standing with one foot on each, shoveling coal into the fire. He fell between the engine and tender and was run over by the latter and killed. Appellee, as administrator of his estate, brought this suit in the superior court of Cook county to recover damages for his death, and obtained a judgment, which was affirmed by the Branch Appellate Court for the First District.

At the conclusion of the evidence the defendant asked the court to direct a verdict in its favor. The court refused to do so, and the refusal is assigned as error.

The engine was used to haul a regular train and to do switching work between Oakdale and Thornton, and

was taken to defendant's round-house in Chicago once
a week. On the Saturday night before the accident it
was taken to the round-house as usual and was taken
out on Monday morning. It was provided with safety
chains, one on each side of the draw-bar, to prevent the
engine and tender from pulling apart in case the draw-
bar or coupling-pin should break. The engine and tender
were coupled together with the draw-bar and coupling-
pin, and the safety chains were permanently attached
to the tender, to be hooked to the engine. If the coup-
ling was all right the chains would be slack, but were
provided to draw the tender in case the coupling or draw-
bar should break. When the engine went out from the
round-house on Monday morning the safety chains were
unfastened and hanging from the tender, and the round-
house foreman and engineer tried to couple them but
found them a trifle too short. Afterward, during the
week, the engineer made various attempts to couple the
chains, but was unable to do so. It was in use in that
condition until the accident, on Thursday evening, and
on the morning of that day the deceased, who had been
in the defendant's employ as an extra fireman for about
three months, was sent out to fire the engine. On the
return trip, hauling a train, the deceased was standing
with one foot on the engine and the other upon the ten-
der when the coupling-pin broke, and, the safety chains
being uncoupled, the engine and tender parted and the
accident resulted.

The amended declaration contained six counts, but
the court instructed the jury that plaintiff could not re-
cover upon the evidence under either the second, fourth,
fifth or six count. The issues under the first and third
counts were submitted to the jury. The counts with-
drawn from the jury charged the defendant with negli-
gence respecting the draw-bar or coupling-pin, causing
the pin to break. There was no verdict upon those
counts, and the questions arising upon the record relate

only to the first and third counts, upon which the verdict and judgment were wholly based. They charged that the safety chains provided to hold the engine and tender together in case the coupling apparatus should give way were unfastened and disconnected; that defendant was negligent in that respect, and as a result the engine and tender parted, causing the accident. There is no cross-error assigned on the action of the court in instructing the jury that plaintiff could not recover under the second, fourth, fifth or sixth count of the amended declaration, and the instruction must be regarded as correct and not subject to review. The question is whether the court ought to have given the peremptory instruction as to the first and third counts.

The ground for insisting that the court ought to have directed a verdict for the defendant is, that the evidence proved, as a matter of law, that the deceased assumed the risk of the chains being disconnected. It is contended that the burden of proof was upon the plaintiff to show that deceased was ignorant of the fact that the chains were uncoupled, and that he failed to prove such fact, but, on the contrary, the evidence showed that deceased was well aware of their condition and entered upon and continued in the employment without objection. It is the settled law that the servant, when he engages in the employment, does so in view of the risks incident to it; that he will be presumed to have contracted with reference to such risks and assumed the same, and that if he receives an injury resulting from the incidental risks and hazards ordinarily connected with the employment he cannot hold the master responsible. (Cooley on Torts, 521; 20 Am. & Eng. Ency. of Law,—2d ed.—109.) The rule also applies in any case where the servant, during the course of his employment, becomes aware of a defect but voluntarily continues in the employment without objection. Following the universal rule, this court has stated the principle in numerous cases, among which are

the following: In *Camp Point Manf. Co.* v. *Ballou,* 71 Ill. 417, it was said: "The doctrine upon this subject appears to be, that an employee cannot recover for an injury suffered in the course of the business about which he is employed, from defective machinery used therein, after he had knowledge of the defect and continued his work." Again, it was said in *Simmons* v. *Chicago and Tomah Railroad Co.* 110 Ill. 340: "If a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury." In *Chicago and Eastern Illinois Railroad Co.* v. *Geary,* 110 Ill. 383, the court said: "The rule is as contended by counsel for appellant, namely, when an employee, after having the opportunity to become acquainted with the risks of his situation, accepts them, he cannot complain if he is subsequently injured by such exposure. One may, if he chooses, contract to take the risks of a known danger. Presumptively he charges, in such cases, in proportion to the risk, or rather for the risk." In *Herdman-Harrison Milling Co.* v. *Spehr,* 145 Ill. 329, it was said: "That as between employer and employee the latter assumes all the usual known dangers incident to the employment, and that he also takes upon himself the hazard of the use of defective tools and machinery, if, after his employment, he knows of the defect but voluntarily continues in the employment without objection, are familiar rules of law, often recognized by the decisions of this and other courts." In *Chicago Drop Forge and Foundry Co.* v. *VanDam,* 149 Ill. 337, the court said: "As a general rule, the servant will be regarded as voluntarily incurring the risk resulting from the use of defective machinery if its defects are as well known to him as to the master." In *East St. Louis Ice and Cold Storage Co.* v. *Crow,* 155 Ill. 74, it was said: "If the injury was the

result of obvious defects in the barge where he was working, or from causes known to him or which he might have known in the exercise of due care, he cannot recover." In *Pittsburg Bridge Co.* v. *Walker,* 170 Ill. 550, it was said: "An employee assumes the risks of known dangers, and such as are so obvious that knowledge of their existence is fairly to be presumed." In *Swift & Co.* v. *O'Neill,* 187 Ill. 337, it was again said: "It is well understood that as between employer and employee the latter assumes all the usual known dangers incident to the employment, and that he also takes upon himself the hazard of the use of defective tools and machinery, if, after the employment, he knows of the defect but voluntarily continues in the employment without objection."

It is also the rule that an employee of sufficient age and experience is chargeable with knowledge of the ordinary conditions under which the business is conducted and its ordinary risks and hazards, and will be presumed to have notice of and to have assumed all such risks and hazards which to a person of his experience and understanding are, or ought to be, patent and obvious. If a defect is so plain and obvious to the senses that in the exercise of ordinary care the employee would discover it, and he continues in the employment without complaint and without any assurance by the master that the defect will be repaired or the danger removed, he assumes the risk arising from it. (*Indianapolis, Bloomington and Western Railroad Co.* v. *Flanigan,* 77 Ill. 365; *Swift & Co.* v. *Rutkowski,* 167 id. 156; *Lake Erie and Western Railroad Co.* v. *Wilson,* 189 id. 89; *Armour* v. *Brazeau,* 191 id. 117; *Browne* v. *Siegel, Cooper & Co.* id. 226.) The employee, however, has no duty of inspection to examine for and discover latent defects and dangers which arise during the course of his employment, rendering it more than ordinarily hazardous. He is charged with notice of such defects in appliances as the exercise of ordinary care would make manifest to him, but he does not assume the risk of de-

fects of which he has no knowledge and which he can not discover by the use of ordinary care, and of which the master has, or ought to have, knowledge. He has a right to assume that the master has discharged his duty in using reasonable care to furnish him with reasonably safe machinery and appliances, but he cannot assume such fact against his own knowledge of dangerous or defective machinery. The rule is also subject to the limitation that the employee must understand not only the existence of a defect, but must be chargeable with knowledge that the defect exposes him to danger. (*Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614; *Union Show Case Co.* v. *Blindauer,* 175 id. 325.) But where the danger arising from the defect would be obvious to a person of ordinary intelligence, the law will charge him with knowledge of the danger.

The question on whom rests the burden of proof as to the knowledge of deceased concerning the uncoupled condition of the safety chains is the subject of argument by counsel. On the one hand it is urged that the burden of proof was on the plaintiff to show that the deceased did not know that the chains were uncoupled and that the defendant had knowledge of the defect, and on the other hand it is contended that the burden was on the defendant to prove the opposite. There is some conflict of authority concerning the burden of proof in such cases. But it is said in 1 Thompson on Negligence, (sec. 368,) that in those jurisdictions where the burden rests on the plaintiff to prove his own freedom, or the freedom of the person killed or injured, from contributory negligence, the rule, by analogy, is, that the burden will rest upon the employee of proving that he did not assume the risk of the employment, and the want of knowledge of the danger must be averred and proved. In actions for personal injuries it has always been held in this State that the plaintiff must allege and prove that he was free from contributory negligence causing the in-

jury, and the same rule has been adhered to respecting the assumption of risk. In *Goldie* v. *Werner,* 151 Ill. 551, it was held that the burden of proof was upon the servant to establish the three propositions, that the appliance was defective; that the master had notice thereof, or knowledge, or ought to have had; and that the servant did not know of the defect and had not equal means of knowing with the master. The third proposition, of course, relates only to patent defects, and does not embrace the duty of inspection to discover latent dangers and defects. The rule has been followed in *Karr Supply Co.* v. *Kroenig,* 167 Ill. 560, *Chicago and Alton Railroad Co.* v. *Scanlan,* 170 id. 106, *Hines Lumber Co.* v. *Ligas,* 172 id. 315, *Howe* v. *Medaris,* 183 id. 288, and other cases. In 3 Elliott on Railroads (sec. 1311) the author says that he thinks the rule adopted by this court is the correct one, since the employee takes the risk of defects of which he has notice, and in order to constitute a cause of action it is necessary to show that the defect is one for which the employer is responsible, while for defects known to the employee he is not responsible. It is true that where the fact is not susceptible of direct proof it may be inferred from the circumstances, and the plaintiff may be aided by the presumption that a person does not voluntarily incur danger or the risk of death. But that does not affect the question where the burden of proof rests. In a case where a person is killed and there are no eyewitnesses to the accident, there is no dispute that the burden of proof rests on the plaintiff to show due care on the part of the deceased, but if there are no eye-witnesses and no direct proof he is entitled to the benefit of the presumption. Knowledge or want of knowledge of a defect may be inferred from proof of the circumstances. In this case the engineer gave testimony tending to prove that deceased knew the safety chains were not coupled and that he assisted the witness in attempting to couple them, but there was evidence tending to show that the

engineer made contradictory statements out of court respecting the knowledge of the deceased on that question. The space between the engine and tender was covered by a sheet-iron apron, and the duties of the deceased were performed in the gangway. He was not charged with the duty of inspecting the engine to discover whether there were any defects not obvious, and under all the evidence the court could not say, as a matter of law, that the deceased knew, or by the exercise of ordinary care ought to have known, that the chains were disconnected, and that a person of ordinary prudence would have understood that running the engine without coupling them rendered the employment dangerous. Those were questions proper to be submitted to the jury in the first instance, subject to the judgment of the trial court and Appellate Court as to whether their verdict was against the weight of the evidence. We think there was no error in refusing to give the instruction directing a verdict.

The defendant was entitled, however, to have the question whether the risk was assumed by the plaintiff either as an incident to his employment generally, or as arising from a defect of which he had knowledge, submitted to the jury upon correct instructions as to the law. The only instruction given to the jury on the question of the assumption of risk was the second given at the request of plaintiff, as follows:

"The court instructs the jury that if you believe, from the evidence, that the safety chains on the engine in question were uncoupled before and at the time of the injury, and that as a result thereof the engine was not ordinarily safe for the deceased to work upon, and that its said condition was unusual and was the direct result of the defendant's negligence, if any, as charged in the first and third counts, or either of them, in the declaration, then you are instructed that the deceased did not assume the risk or dangers, if any, arising from the chains being uncoupled, unless you believe, from the evidence,

that he knew, or by the exercise of ordinary care might have known, that said chains were uncoupled in time to have avoided the injury which resulted in his death. But you are further instructed that if you believe, from the evidence, that he did know, or by the exercise of ordinary care might have known, that the chains were uncoupled, then the rule of law as to the effect of such knowledge or means of knowledge upon his part is, that if, under all facts and circumstances shown in evidence, an ordinarily careful or prudent servant, acting with ordinary care and prudence for his own safety, would not, under similar conditions, have continued the same work that the deceased was performing under the same risk or dangers, then the deceased must be charged with assuming said risk or dangers, if any; but, upon the other hand, if, under all the facts and circumstances shown in evidence, an ordinarily careful and prudent servant, acting with ordinary care and prudence for his own safety, would under similar conditions have continued the same work under the same risk or dangers, then the deceased did not necessarily assume said risk or dangers, if any. Whether he did or did not assume said risk or dangers, if any, is a question for the jury to determine under all the evidence and the rule of law above stated."

The first part of the instruction was correct. As a matter of law the employee does not assume risks arising from the negligence of the master unless he is chargeable with knowledge of the fact of such negligence and of the defect or risk. The second part of the instruction advised the jury that if the deceased knew, or by the exercise of ordinary care might have known, that the chains were uncoupled, he would be charged with assuming the risk or dangers arising therefrom if an ordinarily careful and prudent person, acting with ordinary care and prudence for his own safety, would not have continued in the same work, but if an ordinarily careful and prudent servant, acting with ordinary care and pru-

dence for his own safety, would under similar conditions have continued the work, the deceased did not necessarily assume the risk. It made the test of plaintiff's right to recover, the negligence or want of negligence of the deceased, and told the jury that whether he did or did not assume the risk was to be determined under that rule of law. It took from the jury all questions of the assumption of risk on account of the knowledge of the danger and continuing in the service without objection. Contributory negligence and assumption of risk are entirely different things in the law. Although the two questions may both arise under the facts of a case, yet they are wholly separate and distinct. Every person suing for a personal injury must show that he was in the exercise of ordinary care and caution for his own safety, so that the question of contributory negligence may be involved in every case; but an employee may have assumed a risk by virtue of his employment, or by continuing in such employment with knowledge of the defect and danger, and if he is injured thereby, although in the exercise of the highest degree of care and caution, and without any negligence, yet he cannot recover. (*Miner* v. *Connecticut River Railroad Co.* 153 Mass. 398; *Mundle* v. *Hill Manf. Co.* 86 Me. 400; *Louisville and Nashville Railroad Co.* v. *Orr*, 84 Ind. 50; *Bodie* v. *Charleston and W. C. Railway Co.* 61 S. C. 468; *Cunningham* v. *Bath Iron Works*, 92 Me. 501; *Carbine* v. *Bennington and Rutland Railway Co.* 61 Vt. 248; *St. Louis, Iron Mountain and Southern Railway Co.* v. *Davis*, 54 Ark. 389; *Texas and Pacific Railway Co.* v. *Bryant*, 8 Tex. Civil App. 134; Bailey on Master's Liability for Injuries to Servants, 197; Bailey on Personal Injuries, sec. 938.) Some occupations are attended with great danger, and the use of certain instrumentalities is so dangerous that no degree of care will protect the employee in all cases, but if he voluntarily undertakes to do work ordinarily attended with perils, although he uses all the care he is capable of, he assumes the risk. He is defeated, not

because of his negligence in such a case, but because by his contract or by continuing in the service without objection he has assumed the risk of injury. (3 Elliott on Railroads, *supra; Swift & Co.* v. *Rutkowski, supra.*) In *Herdman-Harrison Milling Co.* v. *Spehr, supra,* it was held that if the plaintiff had been an adult he would have assumed the risk of the employment, and the court said: "The requirement in the instruction that he must have used reasonable care and prudence, 'considering his age and experience,' has no reference to the risk or hazards of his employment."

There are many limitations of the doctrine of assumed risk, such as the duty of the master to disclose to the employee latent defects and dangers, and to instruct a servant that is ignorant, inexperienced or incapable, from want of maturity or otherwise, to understand and appreciate the nature and extent of dangers to which he is exposed. So, also, a risk from a defect is not assumed by the servant where he calls the attention of the master to it and is assured that it will be repaired, and he may remain in the service for a reasonable time under that assurance. There are other cases where, by the order of the master or one standing in that relation, the servant is directed to encounter a danger, and his duty being that of obedience, he does not assume the risk. In the case of a promise to repair, or of a command, and perhaps some other cases, the question is one of contributory negligence on the part of the servant, depending upon whether the danger was so great that an ordinarily prudent person would not have encountered it. (*Chicago Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 Ill. 573; *Illinois Steel Co.* v. *Schymanowski*, 162 id. 447; *West Chicago Street Railroad Co.* v. *Dwyer*, id. 482; *Chicago Edison Co.* v. *Moren*, 185 id. 571; *Slack* v. *Harris*, 200 id. 96.) In those cases the question of assumed risk, which is founded in contract, is removed by the promise to repair, the coercion or other sufficient cause, but the question of contributory negli-

gence involved in every case still remains. The employee must always exercise the degree of care which an ordinarily prudent person would have exercised under the same circumstances, but he does not assume the risk resulting from a direct command. *Dallemand* v. *Saalfeldt,* 175 Ill. 310, *Offutt* v. *World's Columbian Exposition,* id. 472, *Graver Tank Works* v. *O'Donnell,* 191 id. 236, and *Western Stone Co.* v. *Muscial,* 196 id. 382, are cases of that character. In *Chicago and Alton Railroad Co.* v. *House,* 172 Ill. 601, the employee had no knowledge that the switch was open. The defendant was in fault in taking away a light which had been kept on the switch, and the claim that the risk was assumed rested only on the mere possibility that sometime an employee might leave a switch open and the fireman might thereby be killed. The decision in that case is not an authority for the proposition that assumption of risk rests upon contributory negligence. All the cases relied upon by counsel for plaintiff come within some well recognized exceptions to the rules concerning assumed risks. In this case there was no question of immaturity of the employee, promise to repair, assurance of safety, or coercion, and the question of the assumption of the risk was fairly presented by the evidence. We think it apparent that the question was not correctly submitted to the jury by the instruction, and that it confused the doctrine of assumption of risks with contributory negligence. There was no instruction which correctly stated the risk assumed by a servant who remains in the master's employ without complaint, knowing of the existence of defective appliances. The rule on that subject has nothing whatever to do with care or want of care, either of the servant or of the master.

In answer to the objections to the instruction, it is claimed that the instruction is not inconsistent with the assumption of risk being treated as a matter of contract; that the instruction did not negative that proposition, and that the inference to be drawn from it is, that re-

maining at work under the circumstances almost charged the deceased with assuming the risk, but not necessarily so. We do not think the jury would understand the instruction in that way, and the objection would not be obviated if they should.

The judgments of the Appellate Court and superior court are reversed and the cause is remanded to the superior court.                    *Reversed and remanded.*