### Electrical Installation Co. v. Peter Kelly.

1. MASTER AND SERVANT—*Servant Charged with Knowledge of Obvious Dangers.*—Where the danger arising from coming into contact with a swiftly revolving fan is obvious to a person of ordinary intelligence, the law charges the servant with knowledge of such danger.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed. Opinion filed October 30, 1903. Rehearing denied November 24, 1903.

F. J. CANTY and AMERICUS B. MELVILLE, attorneys for appellant.

EDMUND S. CUMMINGS, attorney for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

Appellee brought in the Superior Court an action on the case for personal injuries in which he had a verdict for $5,000. A motion for a new trial was denied and judgment entered on the verdict, to reverse which this appeal is prosecuted.

At the close of the evidence defendant asked the court to direct a verdict for defendant. The court refused to do so, and this refusal is assigned as error.

At the time of the injury appellant was engaged in laying electrical wires for an elevated railroad company from its power-house to and along its road, and employed appellee to take part in such work. The power-house was on the east side of State street and ran back 100 feet. Thirteen feet north of it was a cooling tower, a part of the power plant. This also fronted on State street, was forty feet high and sixty-five feet long. A picket fence ran from each end of the tower to the power-house, thus inclosing a court sixty-five feet long from east to west, and thirteen feet wide from north to south. In the cooling tower were five fans, each ten feet in diameter, turning upon a north and south axis about one hundred and thirty times a minute. The south ends of these fans, the outer blade of each, projected twenty-one inches beyond the south face of the tower into the court. The fans were three and a half feet above the ground, and they were used to force air into an upright box to cool water from the condenser, which ran down screens or mats placed in the box, to a tank below the level of the fans. The fans threw some water out into the court. A box containing electrical wires running from the power-house to the railroad had, before the present work began, been laid through this court, equidistant from the cooling tower on the north and the power-house on the south. It was twenty-one inches wide, and the top of it

eighteen inches below ground. Over it in the east picket
fence was a gate, and fifty feet east of this gate was the
railroad. The railroad company was preparing to change
its motive power from steam to electricity, and for that
purpose it was necessary to place more electrical wires in
the box. Appellant, in order to do so, directed appellee
and other men in its service to uncover the box from the
railroad to the power-house. They began at the railroad,
passed west through the gate in the east fence into the
court, opening the trench as they went. In the court they
opened the trench past the east fan, past the next fan to
the west, and when appellee was at work in front of the
third fan, at least thirty-five feet west of the east end of the
tower, he was struck by the fan on the left arm and
injured.

The declaration charges that the fans were without pro-
tection or shield; that it was dangerous to work near them;
that of this danger appellee was ignorant; that appellant
negligently ordered him to uncover said box without giv-
ing him notice of said fans or instructing him as to the
danger to which he was exposed, and avers that appellee
was in the exercise of due care for his own safety.

We have carefully searched the record for evidence of
acts or conduct on the part of appellant, or of facts and cir-
cumstances attending the injury from which the inference
that appellee received such injury through the fault or
negligence of appellant might fairly be drawn, and have
found none.

The duty of appellant was to use reasonable care to fur-
nish appellee a reasonably safe place to work.

To uncover the box in front of the fans was the work of
only an hour or two. To the south of the box, between it
and the blank wall of the power house, was a vacant space
five feet wide; to the north of the box, between it and the
south edge of the fans, was a vacant space more than three
and a half feet wide. Appellee, standing with both feet on
the ground over the box as near to the north line of it as
he could stand, could not touch a fan with his hand. To

uncover the box it was not necessary that he should stand upon the very north line of the box, much less that he should go beyond it into the space between it and the fans. In our opinion it was not, under the facts and conditions shown by the evidence, the duty of appellant to set up a barrier between the box and the fans before sending appellee to uncover the box in front of the fans.

The evidence shows that to a man standing in front of one, a fan looked like the driving wheel of a locomotive in rapid motion. The fans made a whirring noise plainly to be heard at least as far away as the east fence; they were in plain sight, with nothing to obstruct appellee's view of them; they threw water into the court in small drops, like a fine rain, and the water fell upon appellee from the time that he came in front of the first fan. Appellee testified in chief in answer to his own counsel as follows:

"Where were these fans with reference to where you were digging? A. The fans were on the north side of me. Q. Did you see the fans there at the time? A. I did not take particular notice of them. Q. Did you see them? A. I saw something that was throwing water. Q. Did you notice whether it was going round or not? A. I did not exactly notice. Q. Did you hear anything at the time? A. Yes, sir, there was a kind of buzzing sound there. Cross-examination: Q. As you would look at the fans you would see that something was going round there? A. Yes, sir, I knew that there was something going around there that made the water fall; that made the water come out. Q. So you knew that fans or something were working around there? A. I knew there was something there."

True, the evidence shows that a man standing in front of a fan could not, by looking at it, see how far the south end of it projected from the side of the building, but it also shows that such distance could be seen by looking, at an angle, at the fans farther away. But it is not important whether appellee, by looking at a fan, could or could not tell how far it projected from the face of the building; he certainly could tell very nearly how far a great fan or wheel, ten feet in diameter, revolving 130 times a minute, was from

338    APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Leach & Son v. A. Custodis Chimney Construction Co.

himself by merely looking at it, and the danger to himself arising from coming in contact with such a fan or wheel would be obvious to a person of ordinary intelligence, and the law therefore charged him with knowledge of such danger. C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492, 498.

In our opinion appellee had abundant notice that the fans were substantially where they were, that they were in rapid motion, and that if he should come in contact with one of them he would be injured; and therefore appellant was not guilty of negligence in failing to give appellee notice of the fans, or in failing to point and instruct him as to the risk and danger to himself of coming in contact with them.

Appellee testified that the blade of the fan struck him near the elbow, or, in his words, "It struck me on the bend of the arm." To receive such an injury he must have stood almost if not quite as near to the outer edge of the fan as to the north line of the box he was directed to uncover, and in going so near to the fan when his work did not require him to do so, he, in our opinion, committed an act of negligence which was a proximate cause of his injury.

It follows from what has been said that, in our opinion, the court should have directed a verdict in favor of appellant. The conclusions to which we have arrived as to the facts of the case render it unnecessary to consider the errors assigned as to the admission and exclusion of evidence or the giving and refusing of instructions.

The judgment will be reversed and the cause will not be remanded.

Mr. Justice STEIN did not take part in the decision of this case.