## Lumaghi Coal Company v. Charles A. Bartlett, Administrator.

1. ASSUMED RISK—*application of doctrine of, precludes recovery by servant from master.* Where the servant had assumed the risk which resulted in his injury, he cannot recover from his master.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Madison county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding  Heard in this court at the August term, 1905. Reversed, with finding of facts. Opinion filed March 22, 1906. Rehearing denied August 29, 1906.

WISE & McNULTY, for appellant; ELLERBE & ELLERBE and L. R. BROKAW, of counsel.

BURTON & WHEELER, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This suit was brought by appellee as administrator of the estate of Rudolph J. Novosat, to recover damages resulting to his widow by reason of his death, while employed in the coal mine of appellant in Madison county, Illinois.

The declaration charged that Novosat was employed by appellant to work in its mine as a driver; that appellant, not regarding its duty to furnish him with a reasonably safe place in which to work, provided him with a certain roadway over which he drove his cars, which was full of holes, and the ties upon which the rails were laid, so exposed that the tail-chain and appliances by which the mule was attached to the cars, were liable to be caught thereon; that the track over which he had to drive was so steep and the rails thereon so slick that the cars would proceed down the track at a rate of speed as fast as the mule he was driving could run; that the mule was hitched to the car by certain appliances, among which was a hook by which the harness on the mule was attached to the front end of the car; that the hook furnished Novosat would become unhooked from cars when they were going down grade, and was therefore unfit, unsuitable and not reasonably safe for the purpose for which it was used; that while Novosat was driving a mule in the mine attached to cars, the hook became unfastened and caught in a tie of the track over which he was

driving or upon some stationary object along the track, causing the car to stop suddenly, throwing him to the ground and inflicting injuries from which he died. The verdict and judgment were in favor of appellee for $1,500.

The only question presented, which we find necessary to consider is, whether the evidence in the case was sufficient to sustain the verdict. Novosat, who at the time of his death was twenty-six years old, was an experienced driver when employed by appellant, and had worked in appellant's mine four or five days, making sixteen to seventeen loaded trips a day, prior to the day he was injured. On May 13, 1904, complaint having been made that coal was not being taken out of a certain entry fast enough, the superintendent of the mine took him from the place where he had been working and sent him to a side entry to bring out the coal. Before sending him in, the superintendent said to him: "There is a pretty steep grade in there, and I will send Fuchs (the boss driver) in with you." Novosat wanted to go on without waiting, but the superintendent made him wait until Fuchs could go with him. This entry was a "stub entry" leading off from the main entry, had been open and used as it was on the day named for two years, and contained ten rooms about seventy-five feet apart. Room ten was farthest from the main entry. The entry ran on a level with the vein of coal and the track on the floor descended gradually from room number ten to room number seven, where it became nearly level. After leaving number seven the track descended again and between number five and number three there was quite a steep grade, spoken of by some of the witnesses as a hill. In hauling the coal out of the entry two cars were attached together and the mule was hitched to the front one by a chain caled a tail-chain. On the end of the chain was a hook which was hooked into the coupling on the car. The speed of the car in coming down grades was checked by placing a sprag or stick in the wheel between the spokes and the

bed of the car so that the wheel could not revolve, but would slide along the track. The steeper the grade the more wheels there were spragged, and the result was to make the rail on the side where the wheels were spragged very smooth and slick in the steep places. In coming out with loads it was customary for the driver to stand with one foot on the bumper, the other on the chain to keep it taut so the hook could not come out, and one hand against the mule to assist in holding the car back. The mule in going along the entries would, as a rule, step between the ties upon which the tracks were laid to get a surer footing and would thus dig out the clay and other material used between the ties and make holes. This was especially true on the grades, where the holes sometimes extended below the bottom of the ties. Fuchs, as directed by the superintendent, took Novosat with him, and together, taking two empty cars, they went into room number ten, where they got two loaded cars to bring out with them. As they got out into the entry Fuchs spragged two of the wheels and at number seven they stopped and two more sprags were put in. The sprags were all put in the wheels on the same side of the car as was the custom at that place, there being some obstruction near the rail on the other side; thus all the wheels on one side were blocked, the cars each having two wheels on a side. Fuchs had put the hook in the coupler at number ten, and at number seven, when they stopped, the hook in some manner came out. Novosat saw it, picked up the hook and coupled the chain to the car again. As they started again Fuchs said to Novosat: "Joe, I will drive down," and he replied: "No, I will drive." Fuchs again said: "Maybe you had better let me go down," and Novosat answered: "No, we will both go down." Novosat then took his place on the left side, with one foot on the bumper and one on the tail-chain, and with his hand against the mule, while Fuchs stood on the right side with his foot on a projecting iron. As they went

Lūmaghi Coal Co. v. Bartlett.

down the steep grade, between rooms three and five, the tail-chain became unfastened from the car and the hook dropped down and caught under a tie, thus stopping the mule. The cars ran against the mule and were suddenly stopped, causing Novosat to be thrown off and killed.

There was no controversy whatever concerning the circumstances leading up to the death of Novosat, or the conditions existing in the mine at the time and previous thereto, and we are of opinion that the uncontradicted evidence in the case shows that Novosat came to his death by reason of one of the ordinary risks and hazards of the business in which he was employed and not by reason of the negligence of appellant; that he was an experienced driver; that he was warned of the steep grade or hill by the superintendent; that he was shown over the way by Fuchs, the boss driver; that he was again warned by Fuchs just before he started down the grade; that he was familiar with the kind of work and chain and manner of using the same in the mine, by his experience of four or five days in which he had to use them a number of times; that he was familiar with the hook in question from the fact that he picked it up and fastened it himself just before he started down the grade; that not only were the dangers and risks connected with driving through the entry in question, open and obvious so that he could have ascertained them by the use of ordinary care, but the evidence shows they were pointed out to him and he had actual knowledge of them; that not only did he know the danger, but when warned by Fuchs who proposed to drive the car down, refused to let him do so, but insisted upon driving down himself.

Under these circumstances it must be held that Novosat assumed the risk of going down the grade in question in the manner in which he did, and therefore appellee was not entitled to recover in this case. C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492.

The judgment of the court below will be reversed.

*Reversed with finding of fact.*

Finding of facts, to be incorporated in the judgment: We find as ultimate facts, that the death of Rudolph J. Novosat, appellee's intestate, was not caused by the negligence of appellant, but was brought about by one of the ordinary risks and hazards of the employment in which he was then engaged, which he voluntarily assumed.