# CASES

# FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1908.

---

## Corn Product Refining Company, Appellant, v. William Cherry, Appellee.

1. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* The doctrine of assumed risk does not apply as against a servant who is injured while performing work at the specific direction of his master.

2. INSTRUCTIONS—*when not erroneous in ignoring doctrine of assumed risk.* An instruction is not erroneous ignoring the doctrine of assumed risk where such doctrine has no application to the cause.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. CHAS. T. MOORE, Judge, presiding. Heard in this court at the February term, 1907. Affirmed. Opinion filed September 13, 1907. Rehearing denied February 27, 1908.

THOMAS STALLINGS, for appellant; JOHN A. BLOOMINGSTON, of counsel.

J. M. BANDY, and KEEFE & SULLIVAN, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellee to recover for personal injuries, sustained by him while in the employ of appellant.

The declaration contains two counts. The first al-

(1)

leged that defendant used in its manufacturing plant, a certain hose with an iron nozzle, through which steam was forced in cleaning portions of the machinery connected with the boiler; that the nozzle was so defectively and insecurely attached to said hose, that it was liable to become detached when steam was forced through it; that appellant knew or, by the use of ordinary care, should have known the defective and insecure condition of the hose; that appellee was wholly inexperienced in cleaning said machinery by use of said hose, and did not know of the insecure fastening of the nozzle; that he was directed to use said hose and nozzle by his foreman and while so using it, the nozzle, by reason of its insecure fastening, became detached from the hose and steam was directed against the plaintiff and he was burned and scalded thereby. The second count alleged appellee was inexperienced in the use of steam machinery; that on the day in question he was taken from his usual duties by his foreman and ordered to hold the nozzle of said hose so as to direct the steam passing through the same upon certain machinery to be cleaned; that said nozzle did not appear to him to be securely fastened to the hose and he called the attention of the foreman to that fact; that the foreman examined or pretended to examine the fastening and informed plaintiff that the hose and nozzle were safe for him to use; that appellee thereupon proceeded to use the same as directed, and while so doing, the nozzle became detached from the hose by reason of its defective fastening, and he was burned and scalded by the steam. There was a plea of the general issue, a trial by jury, a verdict for $575 and judgment for that amount.

Besides the physicians who testified as to the nature, extent and severity of the injuries received by appellee, there were only three witnesses, appellee, who testified on his own behalf, and the foreman of the boiler room and the engineer, who testified on behalf of appellant. It appears from the proofs that on the morning of July

25, 1906, appellee and two other men were working under a foreman in appellant's boiler room at its factory at Granite City, Illinois, where he had been employed nearly a year. At the time the injury occurred and for sometime previous, he was head boiler washer. There were several large steam boilers in the boiler room used by appellant and in these boilers many rows of water pipes or flues. These flues would necessarily become more or less covered with soot and dust from the fire below and to get the best results it was necessary to clean them from time to time. This was usually done by a man employed for that purpose, who was accustomed to use for this work, a hose attached to the boiler, on the other end of which was an iron nozzle, about four feet long, equipped with a handle. The cleaner would open the door at the end of the boiler, put the nozzle in between rows of flues and turn on the steam which would come with great force and blow away the dust and soot from the flues. He would then move to another place and so continue until all the flues were gone over. On the morning of the day in question, in the absence of the regular flue cleaner, the foreman ordered appellee to clean the flues in a certain boiler. Appellee at once proceeded to do the work he was instructed to do. While he was standing on a plank in front of one of the boilers, holding the nozzle, it became partly detached from the hose and fell down, catching the handle in his overalls and turning the escaping steam against him, whereby he was severely scalded.

Appellee testified that shortly after he began his work, he discovered a leakage of steam at the point where the nozzle was inserted in the hose and immediately informed the foreman thereof; that the foreman examined or pretended to examine the hose and nozzle and told him to go ahead with his work; that there was no danger. The foreman Hanley directly denied that he examined the nozzle and hose and told appellee to proceed with the work, but testified that appellee himself attached the nozzle to his hose that morning; that

in doing so appellee made some changes in the connection; that Hanley who saw him at work, making the changes, told him to "look out" and that appellee said it would be all right. The engineer Brummer testified that while he and the foreman were passing through the machine shop, he saw appellee doing something at a vise; that the foreman spoke to the appellee, but that the witness did not pay any attention to what he said. Appellee testified he had never cleaned the flues before and was inexperienced in that work, while the foreman and engineer testified that he had worked at blowing the flues on former occasions.

It is insisted by appellant that as appellee saw the defect in the hose or nozzle, and worked with them for some time thereafter, he assumed the risk of injury from such defect. Appellee claims that he continued at the work in which he was engaged under direct command from his foreman.

In C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492, it is said: "Where by the order of the master or one standing in that relation, the servant is directed to encounter a danger, and his duty being that of obedience, he does not assume the risk. In the case of a promise to repair or of a command, and perhaps some other cases, the question is one of contributory negligence on the part of the servant, depending upon whether the danger was so great that an ordinarily prudent person would not have encountered it. * * * The employee must always exercise the degree of care which an ordinarily prudent person would have exercised under the same circumstances, but he does not assume the risk resulting from a direct command."

Whether appellee was at the time of the injury in the exercise of ordinary care for his own safety, the circumstances leading up to the injury, and the extent of the injury, were questions of fact for the jury and we find in the record no sufficient reason, arising out of the facts, for disturbing their verdict. Nor does it appear to us that the amount of the verdict is, as claimed by appellant, excessive.

Only one instruction was given for appellee and it instructed the jury if they found "from a preponderance of the evidence that the defendant was guilty of the negligence charged in the declaration, and that such negligence was the proximate cause of the plaintiff's injury, and that the plaintiff was at the time of receiving such injury, in the exercise of reasonable care for his own safety, then the defendant is liable." Appellant insists that this instruction is peremptory in its nature, and fails to call the jury's attention to the assumption of the risk and is erroneous.

In Terra Cotta Lumber Company v. Hanley, 214 Ill. 243, relied upon by appellant to sustain its position, it is said: "The instructions complained of are peremptory in form and inform the jury, if they found from the evidence that plaintiff had made out his case as laid in his declaration, or any count thereof, they should find in favor of the plaintiff. The effect of said instructions was to eliminate the question of assumed risk from the case, as it is not averred in either count of the declaration, expressly or by implication, that the plaintiff did not assume the risk of being injured from the falling of the scaffold or that he did not know or have reason to know of its defective condition at the time it collapsed and fell."

We are of opinion that both counts of the declaration in this case, by implication, negatived the idea of assumed risk and that therefore the instruction in question was not erroneous.

Appellant complains that the court refused four instructions and modified five others offered by it. The sixteen instructions given for appellant fully presented its theory of the case and all that was proper in the four instructions refused was fully covered by those given. The modifications of the five instructions by the court were proper and improved the several instructions to which they applied.

The judgment of the court below will be affirmed.

*Affirmed.*