John · Byrne, Administrator, Appellee, v. Marshall Field & Company, Appellant.

Gen. No. 13,944.

1. STATUTE OF LIMITATIONS—*when amended declaration does not state new cause of action.* In an action for death caused by alleged wrongful act an amendment to the original declaration does not state a new cause of action where such amendment consists in the addition after the words "left him surviving" of the words "as his sole heirs and next of kin."

2. STATUTE OF LIMITATIONS—*when additional counts do not set up new cause of action.* Held, that additional counts in an action on the case for death caused by alleged wrongful act for an accident occurring in an elevator did not set up a new cause of action so as to admit of the bar of the Statute of Limitations.

3. INSTRUCTIONS—*upon what must be predicated.* Instructions given should be supported by some evidence tending to sustain the hypothesis contained in the instruction.

4. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* Held, that an elevator operator did not, under the circumstances in evidence in the case, assume the risk of injury from continuing in the performance of his duties as such operator.

5. MASTER AND SERVANT—*what risks are assumed.* A servant only assumes the usual known dangers incident to his employment, and such as are known to him or are so obvious that knowledge of their existence is fairly to be implied. The falling of an elevator by reason of a defect not obvious or apparent, is not a usual risk incident to the employment of operating an elevator; if the defect is not obvious or known to the operator, it is not a risk assumed by him.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT,

Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed July 6, 1908.

HORTON, BROWN & MILLER, for appellant.

JOHN BARTON PAYNE, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment for $5,000, rendered in an action in case by appellee, as the administrator of Thomas P. Byrne, deceased, against Marshall Field & Co., a corporation, for, as is averred, negligently causing the death of his intestate. Thomas P. Byrne entered the employ of the defendant, Marshall Field & Co., about the 9th or 13th of September, 1905. His employment was to operate a passenger elevator in defendant's building, in which goods were sold at retail. He continued to operate the elevator from the time he entered defendant's employ until between 3 and 4 o'clock in the afternoon of November 5, 1905, when the elevator which he was operating fell from about the ninth floor of the building to the basement, causing his death. He was dead when taken from the elevator. The deceased was between 26 and 27 years of age at the time of his death. Prior to the deceased becoming an employe of defendant, he worked in a grocery store and market belonging to his father, under an agreement between his father and him that they were to run the store to ascertain if it would pay, and in case, on continuing to run it, the business should arrive at a paying basis, deceased was to have a share in it.

We will refer to the pleadings only so far as is rendered necessary by the contentions of defendant's counsel. The original declaration was filed April 16, 1903, and contains three counts, and defendant pleaded to it the general issue.

February 23, 1905, the plaintiff, by leave of court,

filed two additional counts to the declaration, to which the defendant pleaded the general issue and the Statute of Limitations. The plaintiff demurred to defendant's plea of the Statute of Limitations, which demurrer the court sustained. May 1, 1907, plaintiff, by leave of court, amended the original declaration, and the defendant pleaded the general issue and the Statute of Limitations to the amended declaration, and plaintiff demurred to the plea of the statute. The court sustained the demurrer, and the defendant elected to stand by its pleas of the Statute of Limitations to the original declaration, as amended, and to the additional counts.

Counsel for defendants contend that the court erred in sustaining the plaintiff's demurrer to defendant's plea of the Statute of Limitations to the original declaration, as amended, and also in sustaining plaintiff's demurrer to defendant's plea of the statute to the two additional counts.

The suit was commenced March 19, 1903. Survivorship is averred in the original declaration, as follows: "And the plaintiff further alleges that, by reason and in consequence of the death of the said Thomas P. Byrne, his mother, Mary Byrne, his father, John Byrne, and his sisters, Katherine Byrne, Irene Byrne, Margaret Byrne and Bernice Byrne, whom he, the said Thomas P. Byrne, left him surviving, have been deprived of support," etc. The amendment of the declaration consists in the insertion, next after the words "left him surviving" in each of the three counts of the original declaration, of these words—"as his sole heirs and next of kin." The defendant's counsel argue quite elaborately that the original declaration stated no cause of action, in not averring that the persons mentioned as surviving the deceased were his next of kin. The father, mother and sisters of the deceased were his nearest blood relations, and his next of kin, of which the court will take notice. Who the next of kin of the deceased are is a question of law,

and the law is that the father, mother and sisters of the deceased are his next of kin. Even though it should have been averred that they were his next of kin, the omission to so aver is merely a defective statement of a cause of action. The original declaration states a cause of action, and the declaration, as amended, does not state a new cause of action. What is not necessary to be proved is not necessary to be averred, and it is too plain for argument that the plaintiff, after proving that the survivors were the father, mother and sisters of the deceased, was not obliged to introduce proof that they were his next of kin.

Counsel for defendant say: "The second of the additional counts alleges, in substance, that the defendant failed to furnish and provide an inspector, for the purpose of inspecting the elevator in question, which we respectfully submit is not a cause of action set up in any of the counts of the original declaration; but is a cause of action entirely different from and in addition to any cause of action alleged in the original declaration." On this statement as a premise counsel proceed to argue that their plea of the Statute of Limitations to the two additional counts should have been sustained, and the demurrer thereto overruled. The language of the second additional count is: "And that it became and was the duty of the said defendant to furnish and provide an inspector, for the purpose of inspecting the condition of said elevator shaft and machinery; that it became and was the duty of said defendant to properly inspect said elevator and machinery; but that the defendant, not regarding its duty in that behalf, carelessly, negligently and improperly failed to properly and sufficiently inspect the same. That by means thereof the said elevator or car operated by the said Thomas P. Byrne was permitted to be and remain unsafe and insecure, and was permitted to be operated by the defendant while in such unsafe and insecure condition. That by means thereof, whilst the said Thomas P. Byrne was aboard said car,

in the performance of his duties of said elevator operator or conductor, aforesaid, and in the exercise of due care and caution for his own safety, the said car or cage, whilst descending from, to-wit, the ninth floor of said building, fell,'' etc.

The negligence averred in the count is, clearly, that the defendant carelessly, negligently and improperly failed to properly and sufficiently inspect the elevator and its machinery. This is the cause of action and the only cause of action stated in the count. It is not alleged, in substance, as defendant's counsel say, ''that the defendant failed to furnish and provide an inspector,'' or at all in any way. In the third count of the original declaration it is averred, in substance, that the defendant had in its employ an incompetent inspector, and that by reason of defective inspection by said incompetent inspector, the attachments and appliances of the elevator were allowed to be and remain in a weak, defective and unsafe condition, by reason of which the accident occurred. The second additional count does not state a new cause of action, and the demurrer to defendant's plea of the Statute of Limitations to that count was properly sustained. Counsel do not, in their argument, contend that the first additional count states a new cause of action.

Counsel for defendant contend that the court erred in refusing to give the following instruction requested by defendant:

''The jury are instructed that if you believe from the evidence that plaintiff's intestate, Thomas P. Byrne, knew two or three days before the accident in question that the elevator in question which he was operating was out of order, and continued to operate such elevator, then plaintiff's intestate assumed the risk of such elevator being so out of order, and your verdict should be for the defendant.''

Counsel quote and rely on the evidence of James G. Clark, a witness for the plaintiff, as entitling defendant to the instruction. Clark testified: ''I heard a conver-

sation between Byrne and Mr. Cullen with reference to the condition of this elevator about three days before Byrne's death. I heard Byrne say that he would not be responsible and cursed and be called down about it, because he had reported it and they hadn't looked after it. He wouldn't stand for it, he was going to leave when payday came, or Saturday, I don't remember which, about three days before this occurred. He said he was going to leave because the elevator was out of order and he wouldn't stand for being called down for something he wasn't responsible for. That was two or three days before.'' Mr. Cullen was foreman over the deceased.

We do not think this evidence sufficient basis for the instruction asked. In what respect the elevator was out of order, if at all, at the time of the conversation between Cullen and the deceased, does not appear. It certainly does not appear from the conversation that it was so apparently out of order as to render it dangerous to ride in it, or to cause apprehension in the mind of the deceased that it might or would fall. The conversation is entirely consistent with the hypothesis that the elevator was not in an apparently dangerous condition. It appears from the conversation that whatever the matter was, the deceased was "called down" by the foreman because he had reported it, which would hardly have been the case had it appeared to be seriously out of order. Evidence, which will be hereafter referred to, shows that there was no apparent defect in the elevator or its appliances, or which could have been discovered without careful inspection, such as was not required of the deceased.

Counsel for defendant say that the deceased, by continuing to operate the elevator after the time of the conversation with Cullen, without any promise of the defendant to repair it, assumed the risk; but, as already said, it cannot be legitimately inferred from the conversation that there was any risk of danger to one riding in the elevator.

Defendant's counsel cite C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492, in which the court say: "If a defect is so plain and obvious to the senses that, in the exercise of ordinary care, the employe would discover it, and he continues in the employment without complaint, and without any assurances by the master that the defect will be repaired or the danger removed, he assumes the risk arising from it." The evidence relied on as warranting the refused instruction does not present such case as is stated in the language quoted. The court, in the case cited, use this language: "The employee, however, has no duty of inspection to examine for and discover latent defects and dangers which arise during the course of his employment, rendering it more than ordinarily hazardous. He is charged with notice of such defects in appliances as the exercise of ordinary care would make manifest to him, but he does not assume the risk of defects of which he has no knowledge, and which he cannot discover by the use of ordinary care, and of which the master has, or ought to have, knowledge. He has a right to assume that the master has discharged his duty in using reasonable care to furnish him with reasonably safe machinery and appliances, but he cannot assume such fact against his own knowledge of dangerous or defective machinery. The rule is also subject to the limitation that the employee must understand not only the existence of a defect, but must be chargeable with knowledge that the defect exposes him to danger."

It is also contended that each of instructions 1 and 4, given at plaintiff's request, is erroneous in omitting the element of assumed risk. There was no obvious defect in the elevator or its machinery or appliances, which would suggest to the deceased any danger of its falling. In other words, there was no apparent danger, or probability of danger, to warn the deceased against continuing to operate the elevator. The deceased assumed only all the usual known dangers incident to his employment, and such as were known to him or

were so obvious that knowledge of their existence is fairly to be implied. C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492. The falling of an elevator by reason of a defect not obvious or apparent, is not a usual risk incident to the employment of operating the elevator and, if the defect is not obvious or known to the operator, is not a risk assumed by him.

The foregoing are all the contentions argued or relied on, in argument, by defendant's counsel. That the defect which caused the elevator to fall was not obvious, and was not known to the deceased, are facts fully shown by the evidence. The contract for the construction and installation of the elevator was made February 5, 1906, and by the contract it was to be delivered at defendant's place of business on or before three months from that date. There is no evidence that it was inspected prior to the time of accident. The next morning after the accident, and while it was in the same condition as when it fell, it was inspected by two elevator inspectors in the employ of the city of Chicago—William C. Hood and James Myers. Hood, after explaining the safety devices of the elevator for the prevention of its falling, testified: "When I inspected that car the morning of the 6th of November, 1905, there was present Mr. Myers, another city inspector, and representatives from the Otis Elevator Company. I can't recall all their names at the present time, and representatives of Marshall Field, and also a representative of one of the insurance companies. They instructed Mr. Naylor to raise the car up between five and six feet·so that we.could make a thorough examination of the bottom of the car where the safety dogs were. We found that the safety dogs did not throw, were in the same condition that they would be under the ordinary travel, and we found upon pulling on the governor rope, the same rope which should release the spring and set the dogs—I put all my strength upon it and I found I couldn't throw it. At the present time I weigh about 220. I think I am a

man of normal strength. The dogs would not work. They were rusted. A pull on the rope of the governor of 35 pounds, if it was in good condition, good operating condition, would be required to put it in motion. When I tried to work it I estimate that I put on a power of 500 pounds." He also testified that the cables to which the counterweights were attached pulled out of the counterweights, came loose from the drum and fell on the top of the cage and crushed it in. The cables were steel and weighed about 2,000 pounds. Myers corroborated Hood's testimony. He says: "Mr. Hood being the first one there, he tried to spring the safety appliance. I was right there. I was looking and he was not successful, and he thought I, being a huskier fellow, although my hair being white, I tried it myself and was not successful, and then the representative from the insurance company, I think his name was Murray, he pulled the rope out of its fastening, going to show that we had pulled so tightly on it that it had left its place, but the safeties did not operate. With this power the safeties did not operate. I put in about 350 pounds of power in lifting that day. The appliance did not work because it was rusted and frozen together."

It is not contended that defendant's negligence, in failing to have the safety devices inspected and kept in working order, is insufficient to warrant a recovery.

We find no reversible error in the record; therefore the judgment will be affirmed.

*Affirmed.*