## Stanislaus Kulik, Plaintiff in Error, v. Francis W. Adams, trading as Art Bedstead Company, Defendant in Error.

### Gen. No. 19,227.

1. MASTER AND SERVANT, § 584*—*doctrine of res ipsa loquitur.* Doctrine of *res ipsa loquitur* is not applicable to master and servant cases.

2. MASTER AND SERVANT, § 763*—*when direction of verdict for defendant not improper.* In an action for personal injuries resulting from an explosion of a chill into which plaintiff as an employe of defendant was pouring molten metal, *held* that the direction of a verdict for defendant at the close of all the evidence was not error, where it appeared from the evidence that the explosion might have resulted from one or several causes other than a defect in the chill, and a recovery for plaintiff could only be possible by the inadmissible process of basing one presumption on another.

Error to the Circuit Court of Cook county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed June 15, 1914.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

GOODMAN WALLEM and JOHNSON, BELASCO & McCABE, for plaintiff in error.

RYAN & CONDON, for defendant in error; IRVIN I. LIVINGSTON, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal by a plaintiff in a personal injury suit from a judgment of *nil capiat* and for costs against him by the Circuit Court of Cook County, rendered on the instructed verdict of a jury. The plaintiff, Stanislaus Kulik, had sued the defendant, Francis W. Adams, doing business as the Art Bedstead Company, for personal injuries resulting from an "explosion" or "blowing out" of a "chill" into which plaintiff, as a workman in the employ of Adams, was pouring molten iron.

After all the evidence for the plaintiff had been heard, the defendant moved for peremptory instruction, but the motion was denied.

After the conclusion of all the evidence he renewed his motion and it was allowed. The jury were instructed to find the defendant not guilty and on this verdict the judgment appealed from was entered.

There are several assignments of error, but the only real question in the case is whether this peremptory instruction should have been given or the case allowed to go to the jury on the evidence.

We do not think the matter altogether free from doubt, but after thoroughly considering the evidence we are sufficiently inclined to the opinion that the trial judge was right to prevent our interference with the judgment.

The argument for the insufficiency of the evidence to make a question for the jury is not unfairly stated in the printed argument for the defendant when it is said that since the doctrine of *res ipsa loquitur* is

definitely eliminated by the rulings of the court of last resort in cases of a servant against a master, the recovery of the plaintiff could only be possible by the inadmissible process of basing one presumption on another. The plaintiff, indeed, vigorously contends to the contrary, but he does not convince us. The existence of a rule exempting master and servant cases from the operation of the general principles of the doctrine expressed by *"res ipsa loquitur"* has been doubted and a logical reason for it is difficult often to see; but we are unable to escape from the conviction that it is the settled law of this State.

The rule declaring the exception has indeed been differently expressed, and it is only said to be "perhaps true" in *Diamond Glue Co. v. Wietzychowski,* 227 Ill. 338; but that case and many others announce it in effect. And this quotation from the opinion in the *Diamond Glue Company* case, *supra,* is sufficient for our inquiry here.

"The mere happening of the accident raises no presumption that it was caused by the negligence of the master. (*Spring Valley Coal Co. v. Buzis,* 213 Ill. 341.) It may have no tendency to show that the injury was the result of negligence on the part of the master, or it may have resulted from one of the risks which the servant assumed, or have occurred through the negligence of fellow-servants. In order to recover, the servant must go farther and aver and prove that the appliance was defective; that the master had notice thereof or knowledge, or ought to have had; that the servant did not know of the defect and had not equal means of knowing with the master, and that the defect was the proximate cause of the injury. (*Chicago and Eastern Illinois R. R. Co. v. Heerey,* 203 Ill. 492.)"

There was, in our opinion, no sufficient evidence in this case that there was any defect in the chill. There was testimony that if the chill was rusty inside, such an explosion or "blowing" as occurred might be expected; and there was testimony tending to show that

if the vent was insufficient or choked the same result might follow; but there was no evidence that any such defect existed. There was testimony also that if there was water or moisture in the chill when the molten iron was poured into it, the same result might or probably would occur; but there was no evidence that there was any water or moisture in the chill at the time of the accident.

It is argued, however, that whether the "blowing out" occurred because of rust within the chill or because of an insufficient vent or because of moisture within the chill, the defendant would be equally liable, inasmuch as he owed a nondelegable duty to the plaintiff to use reasonable care to furnish him reasonably safe appliances with which to work—a duty which would in this case be proven to have been neglected by the mere existence of the defect or dangerous condition of the chill from either of the supposed causes. Whether this position would be sound, even if the evidence showed that nothing but one of these causes could have produced the accident, is rendered at least doubtful in consideration of the fellow-servant doctrine, and the peculiar conditions connected with the furnishing of the chills in proper condition to the pourers, of whom the plaintiff was one.

It is undoubtedly true, as a general principle, that the duty of reasonable care in the selection, furnishing and inspection of appliances to work with is nondelegable and that the master is liable for default in it whether he undertakes its performance personally or through another person. But it is also true that although the fellow-servant doctrine does not enter into this field of the selection and inspection of appliances, it does so enter constantly and materially into that of their use. In the case at bar, the evidence seems to indicate the necessity of constant and continuous care to keep the chills in safe condition and of such a connection between the preparation of the chill and its

immediate employment as to make both a "use" rather than one the "equipment" and the other the "use" of the appliance. The men who prepared and the men who poured the iron into the chill apparently worked to every intent in pairs. There was but "a couple of minutes" between the "preparation" and the "pouring" in each case, a witness said, and the repair man and the pourer (in this case the plaintiff) were but "a couple of feet apart." They were, it is argued, co-operating in a single piece of work, and, as the evidence showed, in a position to affect strongly each other's caution. But without deciding the doubtful question involved in this argument, there is another controlling factor to be considered. It is not true, in our opinion, that the evidence taken together showed or even tended to show that there could have been no other cause for the accident than one of these before mentioned, which depended on the condition of the chill. It showed that any one of those might have produced the accident, but not that it must have been one of them which did produce it. Apart from the undoubtedly correct statement of the plaintiff's expert witness, Holt, that the iron is sometimes blown out when every precaution has been taken and that it is "pretty hard to say what will cause an explosion always," the evidence shows, it seems to us, that the action of the pourer himself in pouring too fast or otherwise in an improper manner might cause a "blowing" out of the iron, of the character which occurred in this case. The defendant vigorously contests this, and insists that the evidence shows that no such "explosion" as here happened could possibly occur from a cause unconnected with a defect in the chill.

We are aware that some expressions of witnesses on redirect or recross examination would seem to minimize the possible effects or importance of a "blow" caused by improper pouring, but taken together we think it clear that the evidence (which showed among other things that the "chill" itself did not break nor

was damaged, but was thereafter used in the regular course of business) must be held to have established that a "blow out" like that which injured the plaintiff is possible from another cause than a defective chill and may result from the incautious or unskilful actions of the "pourer." When this is once admitted, it becomes evident that the defendant could only be held liable by the inadmissible process of basing a presumption upon a presumption. *Globe Acc. Ins. Co. v. Gerisch*, 163 Ill. 625. The presumption that the accident happened by reason of a defective or improper condition in the chill (because it *might* have happened from that cause) is based on the further presumption that there was a defective or improper condition in the chill (because there *might* have been such a condi tion). If it were proven either that there was a defective condition in the chill or that no other cause but a defective condition in the chill could have caused the accident, but one inference or presumption would be necessary; but with both these factors in the question problematical the process condemned in the *Gerisch* case *supra,* would be necessary to result in a verdict for the plaintiff.

The judgment of the Circuit Court is affirmed.

*Affirmed.*